**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Marjorie THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2007.
Filed April 11, 2007.

William T.C. Tully, Harrisburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for the Com., appellee.

BEFORE: BENDER, BOWES and

COLVILLE,* JJ.

OPINION BY BOWES, J.:

¶ 1 Marjorie Thompson appeals from the judgment of sentence resulting from a jury conviction for resisting arrest, disorderly conduct, and taunting a police animal. We affirm.

¶ 2 After an evening of dining and music, Appellant and her husband were exiting a parking garage in their vehicle. At the toll booth, they were unable to produce their parking ticket and the attendant informed them they were obligated to pay the eighteen-dollar rate for a lost ticket, as opposed to the five-dollar fare they had anticipated paying. Appellant declared that she would not pay the lost ticket rate and requested that the police be summoned. Before the police arrived, Appellant found the ticket, but the parking garage personnel refused to allow them to exit because the police had already been called. Mr. Thompson then exited the car, indicated that he would break the exit gate, attempted to lift the gate, and then approached the car behind his vehicle and began an argument with its driver.

¶ 3 Two police officers on horseback responded to the call from the parking garage supervisor. Officer Deborah Ewing heard profanities as she approached the garage. Once inside, she observed the unoccupied Thompson vehicle by the booth. Appellant was standing behind the car, and Mr. Thompson was shouting at the driver of the other vehicle. When Officer Ewing attempted to get Mr. Thompson's attention by calling and whistling, he began flailing his arms and hitting the officer. While trying to control her

horse, Officer Ewing informed Mr. Thompson that he was under arrest, but he pulled away from the officer and walked away. At this point Appellant approached Officer Ewing, yelling and waving her hands in an attempt to scare the horse. Appellant hit the horse's nose, causing the animal to rear up.

¶ 4 Officer Canfield then arrived on the scene, dismounted his horse to diffuse the activity among Appellant, Officer Ewing, and Officer Ewing's horse. As the couple attempted to re-enter their vehicle, Officer Canfield yelled, pushed them against the car, threw them to the ground, and a struggle ensued. Appellant and her husband interlocked their arms and legs and refused to respond to Officer Canfield's verbal commands to release their hands. The officers attempted to pry the couple apart to handcuff and place them in custody. After struggling with the officers for a few minutes, Appellant was eventually disengaged from Mr. Thompson and handcuffed after pepper spray was deployed.

¶ 5 After the jury heard the testimony and viewed a videotape of the event, Appellant was found guilty of resisting arrest, disorderly conduct, and taunting a police animal. Appellant was sentenced to twelve months probation, costs, fines, and ordered to perform 250 hours of community service. Appellant's post-trial motion and her motion for modification of sentence were denied. This appeal followed.[1]

¶ 6 On appeal, Appellant argues that the evidence was insufficient to support her convictions for resisting arrest, disorderly conduct, and taunting a police animal.

* Retired Senior Judge assigned to the Superior Court.

1.  On May 23, 2006, the trial court authored a memorandum opinion recommending that the appeals be dismissed because Appellant's 1925(b) statement was untimely. Appellant filed a *nunc pro tunc* petition to vacate the memorandum contending that the Rule 1925 order was improperly served. The trial court granted the petition.

928

¶ 7 Appellant first challenges the sufficiency of the evidence to sustain her conviction for resisting arrest. The standard for review is whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Eichinger,* —— Pa. ——, 915 A.2d 1122 (2007).

¶ 8 The offense of resisting arrest is established when a "person ... with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty ... creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104; *Commonwealth v. Stevenson,* 894 A.2d 759, 775 (Pa.Super.2006). Appellant argues that her "passive resistance" to the officers' attempts to place her in custody belies any intent to strike or use force against them.

¶ 9 Appellant's argument completely ignores the statutory language of section 5104 criminalizing resistance behavior that requires substantial force to surmount. Officer Ewing testified that she struggled to pull Appellant apart from her husband with whom she had interlocked her arms and legs. Although Officer Canfield verbally commanded Appellant several times to put her hands behind his back, she refused to obey and held her arms tightly beneath him. Officer Canfield testified that his attempts to restrain the couple to place them under arrest left him "exhausted." N.T. Trial, 11/15/05, at 122.

¶ 10 In a comparable case, *Commonwealth v. Clark,* 761 A.2d 190, 193–94 (Pa.Super.2000), a defendant took a fighting stance when faced with arrest and then, after being pepper-sprayed in order to be subdued, ran down traffic lanes and struggled with officers to avoid being handcuffed. We upheld his conviction for resisting arrest, concluding that substantial force was required to surmount the resistance. Similarly here, Appellant's use of passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction.

¶ 11 Appellant next argues that the evidence did not establish the elements and *mens rea* necessary for the disorderly conduct offense graded as a misdemeanor of the third degree. The relevant statutory language states:

§ 5503. **Disorderly conduct**

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

¶ 12 Appellant denies that she acted with intent to cause substantial harm or serious inconvenience. She also disputes that the evidence showed she persisted in

any unruly conduct after warnings and requests to desist. To the contrary, the testimony of the Commonwealth witnesses confirms that Appellant continued her boisterous verbal behavior after the officers arrived. The jury also watched the videotape of the incident that shows Appellant swinging her arms in front of Officer Ewing's horse and hitting the horse on its nose. This activity demonstrates that Appellant willfully created a serious inconvenience at the parking garage and made unreasonable noise after the officers attempted to diffuse the situation. Accordingly, the Commonwealth established the elements of the misdemeanor offense of disorderly conduct beyond a reasonable doubt.

¶ 13 Appellant was also convicted of 18 Pa.C.S. § 5511.2(a), taunting a police animal:

§ 5511.2. Police animals

(a) Illegal to taunt police animals.—It shall be unlawful for any person to willfully or maliciously taunt, torment, tease, beat, kick or strike a police animal. Any person who violates any of the provisions of this subsection commits a felony of the third degree.

¶ 14 Appellant claims she was attempting to protect herself from Officer Ewing's horse when she accidentally struck its nose. Appellant disputes that there was a malicious component to her actions; therefore, she claims she lacked the requisite *mens rea* to commit this crime.

¶ 15 At the trial, the jury heard Officer Ewing testify that Appellant approached her while she was atop her mount:

yelling and screaming ... making noises to scare the horse, and flailing her arms her arm came down and hit the top of the horse's nose which caused the horse to rear up, he didn't come up off the ground, but he whipped his head and neck and my horse is backing up into the other horse . . . .

N.T. Trial, 11/15/05, at 28. The jury also viewed the videotape of the incident showing Appellant approach the horse and hit it on its nose. This evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the jury to conclude that Appellant willfully taunted a police animal.

¶ 16 Judgment of sentence affirmed.