J-S32043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEREK LEE ROYSTER, | : | |
| | : | |
| Appellant | : | No. 181 WDA 2015 |

Appeal from the Judgment of Sentence entered on January 15, 2015
in the Court of Common Pleas of Fayette County,
Criminal Division, No. CP-26-CR-0000267-2014

BEFORE:  SHOGAN, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 03, 2015**

Derek Lee Royster ("Royster") appeals from the judgment of sentence imposed following his conviction of disorderly conduct, graded as a third-degree misdemeanor (hereinafter "disorderly conduct - M3"), and resisting arrest.[1]  We affirm.

The trial court summarized the relevant facts as follows:

> On January 20, 2014, a commuter bus operated by James Thomas ["Thomas"] of Fayette Area Coordinated Transportation ("FACT") was making a routine stop at the White Swan Apartments in Uniontown around 2:00 p.m.  Upon making the stop, [] Thomas encountered [Royster] waiting for the bus. About a week prior to January 20, [Royster had] boarded [] Thomas'[s] FACT bus and was "playing his radio as loud as it would go" with no headphones.  [Royster] did not initially comply with [] Thomas'[s] request to turn off the music, and instead, told Thomas to, "Just move the bus."  [Royster] continued to aggravate the situation by exchanging words with

---

[1] 18 Pa.C.S.A. §§ 5503(a)(1) and (b), 5104.

[] Thomas when Thomas exited the bus at the end of his shift, prompting [] Thomas to write an incident report.

Based on this prior incident, Thomas advised [Royster] on January 20 that he was willing to give him a second chance. [Royster] responded, "I don't want to hear anything you have to say. Just move the bus." Thomas then replied that [Royster] needed to exit the bus or Thomas was going to call the police. [Royster] refused to remove himself from the bus[,] so Thomas called the police for assistance[, and pulled the bus to the side of the roadway].

Arriving on scene were Officer [John] Kauer ["Officer Kauer," as well as Officer] Defoor and Chief Cox of the Uniontown Police Department. Officer Kauer entered the bus to speak with [Royster] about what had transpired so far. As the officer walked towards the back of the bus, [Royster] stood up, pointed, and said he wanted the bus moved. Despite Officer Kauer's attempts to de-escalate the situation, [Royster] repeatedly demanded to move the bus and was being "loud" and "combative." Officer Kauer became concerned [regarding] some elderly bus passengers who appeared visibly upset by [Royster's] behavior.

At this time, Officer Kauer advised [Royster that] he was placing him under arrest for disorderly conduct. Again, [Royster] refused to comply with [the] officer['s] instruction, and grabbed onto the support bar located near the seats. [Royster] "refused to let go of the bar" and was struggling with police and yelling. Chief Cox and Officer Defoor had now entered the bus to assist Officer Kauer in securing [Royster]. All three police officers were trying to get [Royster's] hands loose and placed behind his back, but he "continued to struggle." Finally, after a "considerable amount of time," the three officers were able to secure [Royster] and remove him from the bus.

[Royster] was charged with three counts: resisting arrest, false identification to law enforcement, and disorderly conduct [- M3]. A jury trial was held before th[e trial c]ourt on December 11-12, 2014, and [Royster] was found guilty on all counts except [] false identification.

Trial Court Opinion, 3/9/15, at 2-3 (citations to record omitted).

On January 15, 2015, the trial court sentenced Royster to a two-year period of probation, and imposed fines and costs. Royster did not file any post-sentence motions.

Royster timely filed a Notice of Appeal. In response, the trial court ordered Royster to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. After Royster timely filed a Concise Statement, the trial court issued an Opinion.

Royster presents the following issue for our review: "Whether the evidence was legally and factually insufficient to prove that [Royster] was guilty of resisting arrest and disorderly conduct?" Brief for Appellant at 8 (capitalization omitted).

Royster argues that the Commonwealth failed to present sufficient evidence for the jury to properly convict him of disorderly conduct - M3, and resisting arrest. *Id.* at 17-18.[2] Royster contends that his conduct did not meet the elements and *mens rea* necessary to convict him of disorderly conduct - M3 because "the Commonwealth [did not] establish that his intent was to cause public inconvenience, annoyance or alarm." *Id.* at 18; *see also* 18 Pa.C.S.A. § 5503(a)(1) and (b). Royster further asserts that because no valid arrest for disorderly conduct could be made, his conviction

---

[2] We observe that Royster includes in his Argument section case citations that pertain to weight of the evidence claims. *See* Brief for Appellant at 14-16. However, the sole issue identified in his Statement of Questions Involved section, and his Rule 1925(b) Concise Statement, is a sufficiency of the evidence challenge, not a weight of the evidence challenge.

of resisting arrest is therefore also improper. Brief for Appellant at 17-18. In any event, according to Royster, his resisting arrest conviction is not supported by sufficient evidence because "there was no evidence presented that [he] created a substantial risk of bodily injury to the police." *Id.* at 18.

The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, and all reasonable inferences drawn therefrom, there is sufficient evidence to enable the fact-finder to find every element of the offense beyond a reasonable doubt. *Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007). In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014). Additionally, "the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* at 40 (citation omitted).

In order to sustain a conviction for resisting arrest under section 5104, the Commonwealth must establish that a defendant intended to prevent an officer from effectuating a lawful arrest or discharging any other duty, and either that the defendant (1) created a substantial risk of bodily injury to an officer or anyone else; or (2) employed means of resistance that justified or required substantial force to overcome the resistance. 18 Pa.C.S.A. § 5104. The Crimes Code provides that "[a] person is guilty of disorderly conduct

[- M3] if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he … engages in fighting or threatening, or in violent or tumultuous behavior[,]" and "the intent of the actor [wa]s to cause substantial harm or serious inconvenience, or if he persist[ed] in disorderly conduct after reasonable warning or request to desist." *Id.* § 5503(a)(1) and (b).

Here, the record reflects that Royster refused to exit the FACT bus despite Thomas's repeated requests. N.T., 12/11/14, at 19-20. Thomas testified that even after he had stopped the bus and advised Royster that he had called the police, Royster insisted that he would not leave. *Id.* at 20. When the police arrived, there were still several passengers seated on the bus who, according to Thomas, were "irritated" by the delay caused by Royster. *Id.*

Officer Kauer testified that when he boarded the bus to speak with Royster, Royster was standing up, demanding that someone move the bus, and was "loud" and "combative." *Id.* at 28-29. Officer Kauer stated that he repeatedly had attempted to de-escalate the situation and calm Royster; however, Royster refused to exit the bus, and continued to demand that it be moved. *Id.* at 29-30, 32. Offer Kauer even offered to drive Royster to wherever he needed to go, but Royster was unrelenting. *Id.* at 30. Royster also refused to sit down at Officer Kauer's request, and refused to provide the officer proper identification. *Id.* at 30-31. Moreover, Officer Kauer

testified that Royster's unruly behavior was alarming to a point whereby some of the elderly passengers on the bus were becoming "visibly upset." *Id.* at 30. At this point, Officer Kauer advised Royster that he was under arrest for disorderly conduct. *Id.* at 33, 36. Officer Kauer described what transpired thereafter:

> [Royster] grabbed on – there is a bar there …. [H]e grabs the bar and he refuses to let go of the bar, and he is tussling with us[, *i.e.*, Officer Kauer and the two back-up officers on the bus], and he is yelling something. We are trying to get his hands loose and trying to get his hands behind his back to secure him, and he just continued to struggle with us.

*Id.* at 33. Officer Kauer testified that it took the efforts of all three officers to place Royster in handcuffs. *Id.* Officer Kauer stated that "[i]t took a considerable amount of time [to secure Royster], … a lot more than I am accustomed to." *Id.*

First, regarding Royster's conviction of disorderly conduct - M3, the above facts presented at trial provided sufficient evidence for the jury to find, beyond a reasonable doubt, that Royster "recklessly creat[ed] a risk" of "caus[ing] public inconvenience, annoyance or alarm" by "engag[ing] in … tumultuous behavior[,]" and "he persist[ed] in disorderly conduct after reasonable warning or request to desist." 18 Pa.C.S.A. § 5503(a)(1) and (b). The evidence reflects that Royster's tumultuous and unruly behavior caused public inconvenience and alarm to the other passengers on the bus, and he persisted with his "loud" and "combative" conduct despite Officer Kauer's repeated attempts to diffuse the situation. *See Thompson*, 922

A.2d at 929 (upholding the defendant's conviction of disorderly conduct - M3, where she "willfully created a serious inconvenience at the parking garage and made unreasonable noise after the officers attempted to diffuse the situation."); ***Commonwealth v. Schwartz***, 615 A.2d 350, 361 (Pa. Super. 1992) (affirming the defendant's conviction for disorderly conduct - M3, where he had continued to scream at police and the victim, despite the officer's warning to be quiet); ***see also In the Interest of R.P.***, 918 A.2d 115, 121 (Pa. Super. 2007) (holding that there was probable cause to arrest the defendant for disorderly conduct - M3, where, after an altercation on a school bus, the defendant was uncooperative, combative and loud while being escorted away by police, and he attempted to pull away from the officers).

Likewise, the above-mentioned facts were sufficient for the jury to find that Royster acted with the "intent of preventing a public servant from effecting a lawful arrest … [and did so by] … employ[ing] means … requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104.[3] It took *three* police officers "a considerable amount of time" to secure Royster's hands, and he resisted their efforts to make a lawful arrest for disorderly conduct by struggling and yelling. ***See Thompson***, 922 A.2d at 928

---

[3] Contrary to Royster's argument, it is not required for a conviction of resisting arrest for the Commonwealth to present evidence that that he created a substantial risk of bodily injury to the police. Royster ignores the language of section 5104 concerning resistance behavior that justified or required substantial force to overcome.

(holding that the evidence was sufficient to support the defendant's resisting arrest conviction where, after being informed by police that she was under arrest for disorderly conduct, she "interlocked her arms and legs" around her husband, thus requiring that the officer use "substantial force to overcome the resistance" to effectuate the arrest); ***Commonwealth v. Schwenk***, 777 A.2d 1149, 1154-55 (Pa. Super. 2001) (upholding the defendant's conviction for resisting arrest where, *inter alia*, he struggled and resisted the attempts of two police officers to place him in handcuffs, requiring force to subdue him).

Viewing the evidence in the light favorable to the Commonwealth, we conclude that there was ample evidence presented to sustain Royster's convictions of resisting arrest and disorderly conduct - M3.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2015