J-S23018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL PATRICK MCHUGH, JR. | |
| Appellant | No. 897 EDA 2015 |

Appeal from the Judgment of Sentence January 2, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003037-2014

BEFORE: PANELLA, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.: **FILED MAY 24, 2016**

Michael Patrick McHugh, Jr., appeals from the judgment of sentence imposed on January 2, 2015, in the Court of Common Pleas of Lehigh County. A jury found McHugh guilty of resisting arrest, and the trial court found McHugh guilty of summary counts of disorderly conduct, driving while operating privilege is suspended or revoked, and operating a vehicle without a valid inspection.[1] The trial court sentenced McHugh to a term of incarceration of two months to 18 months less one day on the resisting

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 5104, 5503(a)(4), and 75 Pa.C.S. §§ 1543(a), 4703(a), respectively.

arrest charge.[2]    McHugh challenges the sufficiency and weight of the evidence for his resisting arrest conviction.[3]    Based upon the following, we affirm.

The trial court fully summarized the facts and procedural history in its Pa.R.A.P. 1925(a) opinion, and therefore there is no need to reiterate the background of this case here.[4]    **See** Trial Court Opinion, 6/2/2015, at 1–6. Very briefly, the charge for resisting arrest arose after police had stopped

_____

[2] The trial court initially sentenced McHugh to not less than two months nor more than 18 months less on day imprisonment on the charge of resisting arrest, and a consecutive six months' imprisonment on the driving under suspension charge. Thereafter, the trial court granted in part, and denied in part, McHugh's motion for reconsideration of sentence, and amended his sentence on the driving under suspension charge to a period of imprisonment of not less than three months nor more than six months. **See** Order, 2/27/2015.

[3] Specifically, McHugh argues:

> Was there sufficient evidence to support the jury verdict that [McHugh] acted to create a substantial risk of bodily injury to the officer or employed means justifying or requiring substantial force to overcome his resistance?
>
> ****
>
> Was the jury's verdict convicting [McHugh] of resisting arrest against the weight of all of the evidence as presented regarding [McHugh's] alleged resistance?

McHugh's Brief at 7.

[4] We note that McHugh complied with the trial court's order to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

McHugh's vehicle at 2:00 a.m., on July 14, 2014, and determined that the vehicle would have to be towed due to McHugh's suspended license. Due to McHugh's conduct at the scene, McHugh was placed under arrest and in the process the arresting police officer suffered a leg fracture.

Our standard of review of a sufficiency claim is well settled:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the  appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722–723 (Pa. Super. 2013) (quotation marks and citations omitted).

A defendant may be convicted of resisting arrest if he, "with the intent of preventing a public servant from effecting a lawful arrest or discharging

any other duty, ... creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.

McHugh contends the evidence did not establish that "he acted in a manner that threatened the officer with bodily injury or otherwise require[d] the officer to employ substantial force to control [McHugh]." McHugh's Brief at 10. Specifically, McHugh asserts his actions in "tens[ing] his upper body and draw[ing] his arms in towards his body … do not rise to the level of creating a substantial risk of bodily injury or requiring the use of substantial force to overcome resistance." McHugh's Brief at 15, *citing* **Commonwealth v. Eberhardt**, 345 A.2d 651 (Pa. Super. 1982). McHugh claims that "[a]ny physical contact was initiated by the police officer and not Mr. McHugh and the resulting injury suffered by Officer [Ryan] Koons resulted from the failure in his technique in using the leg sweep which not only brought down [McHugh] but also caused [McHugh] to fall into the officer which dropped them both to the ground." McHugh's Brief at 15. McHugh asserts the resisting arrest statute "mandate[s] that the forcible resistance used by the defendant involve a substantial danger to the officer." *Id.* McHugh maintains "there simply was no testimony that [he] punched, struck, kicked, shoved or use[d] any part of his body to strike the officer or used any amount of force justifying or requiring substantial force to be placed upon him by the officer." *Id.* at 16.

Officer Ryan Koons, the arresting officer, testified as follows:

Q.  Did there come a point in time when [McHugh] left the area of the car?

A.  Yeah, when we told him that the tow truck was on the way, that he was going to have to calm down and stop cursing, the neighbors were coming out. And, eventually, a woman was standing on the porch.  I heard her screen door open and close.  That's how I noticed her.  And she was up there watching this whole thing.  That's how loud it was getting.

****

Q.  At some point, did you tell him he could just leave?

A.  Yes, several times.

Q. Did he eventually leave the area of the car?

A. Not really.  He stood about 15 yards from where Officer [Damien] Lobach was dealing with the tow truck driver.  That's where we told him to stand.  I'm standing there watching him, because he's not leaving, to cover [Officer] Lobach because he is dealing with the truck.

****

Q.  Okay.  After the tow truck arrived, in that time period, did the situation with [McHugh] and his actions change at all?

A.  Yes. He escalated, got loud again.  You are not taking my fucking car.  And that's when he started to walk towards the truck, and I started to walk towards him.

Q.  What did you do, if anything in response to that?

A.  As I'm approaching him, I'm telling him, turn around, put your hands behind your back, you are going to jail.  At this point, he takes his arms, pulls them in like this and actually yells, no.  And he goes and positions himself between a car and the curb.  And he's got his arms like this.

****

- 5 -

Q. So slow it down at this point. So you mentioned his behavior. I want to stop at this point in time and break it down a little bit. Did you tell him he's going to be placed under arrest?

A. Correct.
.
Q. Had you warned him that that might be coming?

A. He had been warned several times.

Q. Did his behavior persist?

A. It did.

****

Q. So he is coming in towards the truck and you are telling him he's going to be placed under arrest?

A. Right. When I started to walk towards him and tell him he's under arrest is when he backed up and pulled his arms in and said, no.

Q. You explained to him he might be placed under arrest if he didn't calm down?

A. Several times prior to him even being moved over to where he moved.

****

Q. Okay. And when you are doing something like addressing somebody who is being a disturbance or disorderly, you know, is that something you handle right there on the scene?

A. It can be. If it's a summary violation, it can be – a ticket can be written and you can be released on scene.

Q. Okay. And in this case, you advised him he's going to be taken into custody. And what does he do?

A. As I'm approaching him and telling him to turn around and put your hands behind your back, you are under arrest, you are

going, you are done, I have had enough, that's when he started to back up and pull his arms in.

\*\*\*\*

Q. What was he doing that you had enough of?

A. Yelling and screaming and waking up the neighbors and acting foolish.

Q. So you – at this point in time you started talking about him, you know, saying no and closing up as you are trying –

A. I had made the decision in my mind that he was going to jail at that point, that he was going to get arrested. So I walked up, grabbed one of his arms and I was trying to pull his arm down to place him under arrest. At which point, he pulled in harder, turned towards the car, this way, and then pushed off.

\*\*\*\*

Q. So he goes up against the car?

A. Yeah. When he pushes off, we end up on the sidewalk, at which point I just – an outside leg trip is basically, what it is. It's just like a hip toss. I put my left leg over.

Q. Okay. So he goes over your leg?

A. Over and down.

Q. And then what happens next?

A. I hear a snap. And I, actually, let go. I thought – when we hit the ground pretty hard, I thought it was him. And then I felt the pain.

\*\*\*\*

Q. Can you describe what injury you had?

A. My fibula, which is the bone on the outside of your leg, this one here, was fractured like that.

Q. You are demonstrating with your hands. Just for the record, you are kind of using your hand to show that you –-

THE COURT: A 45-degree angle.

THE WITNESS: Yeah.

\*\*\*\*

Q. If Mr. McHugh had given up his hands when you requested that or grabbed his hands, would you have had to hip toss him?

A. No.

Q. If he had not pushed off against the car, would you have had to hip toss him?

A. No.

Q. If he had not been disorderly in the first place, would you have had to arrest him?

A. I didn't want to arrest him.

N.T., 12/3/2014, at 39–42, 44–47, 49, 70–72.[5]

Although McHugh argues he "used no force against the officer,"[6] the statutory language of Section 5104 "'does not require the aggressive use of force such as a striking or kicking of the officer.'" *Commonwealth v. McDonald*, 17 A.3d 1282, 1285 (Pa. Super. 2011), *citing Commonwealth*

---

[5] Officer Lobach also testified that he saw Officer Koons trying to take McHugh into custody, saw them struggling, saw McHugh push off the van where he was positioned, and then saw both fall to the ground. *See* N.T., 12/3/2014, at 89–90, 99.

[6] McHugh's Brief at 16.

***v. Miller***, 475 A.2d 145, 146 (Pa. Super. 1984). This Court has held that a defendant's passive resistance that requires police to use substantial force to effectuate an arrest is sufficient to sustain a conviction for resisting arrest. ***See Commonwealth v. Thompson***, 922 A.2d 926, 928 (Pa. Super. 2007) (evidence was sufficient to support resisting arrest conviction where defendant, who interlocked her arms and legs with her husband, used passive resistance requiring police to use substantial force to overcome her resistance; officer's efforts to restrain her left him exhausted).

To the extent that McHugh relies on ***Eberhardt, supra***, his reliance is misplaced since in that case the appellant was charged on only the first clause of Section 5014 (substantial risk of bodily injury to public servant). ***See Eberhardt,*** 450 A.2d at 652. Here, McHugh was charged under both clauses of Section 5104.[7]

Based on our examination of the record and applying our standard of review, we conclude Commonwealth's evidence showed beyond a reasonable doubt that McHugh's conduct in response to Officer Koons' notifying McHugh

---

[7] ***See*** Criminal Complaint, 7/10/2014 (alleging "MICHAEL P MCHUGH JR with intent of preventing a public servant, namely (OFFICER KOONS OF THE ALLENTOWN POLICE DEPARTMENT), from effecting a lawful arrest/discharging a duty, namely (DISORDERLY CONDUCT), did create a substantial risk of bodily injury to the said public servant and/***or did employ means justifying or requiring substantial force to overcome the resistance***, in violation of Section 5104 of the PA Crimes Code.") (emphasis added).

he was under arrest required Officer Koons to use substantial force to take him into custody. Accordingly, McHugh's sufficiency challenge warrants no relief.

McHugh also challenges the weight of the evidence for the charge of resisting arrest.[8] Our review of this claim is guided by the following legal principles:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319-320, 74 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

---

[8] A weight of the evidence claim must be raised: "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). Here, we find McHugh preserved his weight challenge by raising it orally at the hearing on the post sentence motions. **See** N.T., 2/27/2015, at 6–7.

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-22, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054–55 (Pa. 2013).

In his brief, McHugh argues:

> [W]hen all the evidence is viewed dispassionately, there simply was no justifiable basis for saying that he resisted arrest. He took no action against the officer and, while he may have been loud and obnoxious, he gave no reason to the officer to be assaulted through the leg sweep maneuver. He was convicted for being loud, angry, and profane but not for being assaultive or threatening the officers.

McHugh's Brief at 18.

At trial, McHugh described the events immediately prior to his arrest, as follows:

> A. I think it was more or less a decision that [Officer Koons] had made to run towards me. And, like I said, he never announced that I was being arrested. Like I said, he ran towards me, striking me in the face. And then that force that was used, it sent my, like, body, and my head into the parked minivan.

- 11 -

And then we both collapsed to the ground right away instantly. And then there I was repeatedly kneed in my side and back.

Q. What did you do with your hands?

A. I think – I don't know who put the cuffs on me. It was, like, very instant.

Q. I mean, what did you do with your hands? Were you punching back? Were you protecting yourself?

A. No. I used no physical force whatsoever. I was not hitting, striking. I did not push.

N.T., 12/3/2014, at 115.

Susan Carl, a "close friend" of McHugh's and his agent under his power of attorney,[9] also testified on behalf of McHugh. She stated she had heard the incident while she was on the phone with McHugh, who had called to ask her to pick him up:

I was talking to [McHugh]. He said that they were towing his car. He was asking the officer, please don't tow my car. The officer was telling him to get moving.

He said, okay, can I at least get my stuff out of my car before you tow it. At that point, the phone dropped. I heard nothing except (witness pounds fist) ow, (witness pounds fist) ow. Twice. Twice. The phone was still on. …

N.T., 12/4/2014, at 11.

The trial court determined "[t]he verdict in this case does not shock the conscience." Trial Court Opinion, 6/2/2015, at 8. The trial court explained that the evidence showed McHugh "struggled with Officer Koons

_____

[9] *See* N.T., 12/4/2014, at 13.

while he attempted to arrest [McHugh], which required substantial force to overcome and caused substantial injury to Koons." ***Id.*** The trial court pointed out that McHugh "admitted to lying under oath about whether he was driving the vehicle," and concluded that "[t]he jury evidently chose to believe the [Commonwealth's] version of events that proved [McHugh's] guilt and, in so doing, rendered a verdict consistent with the weight of the evidence." ***Id.***

Having reviewed the trial court's rationale in support of its decision to reject McHugh's weight claim, we find no abuse of discretion. ***See Clay, supra***. Accordingly, we conclude McHugh's weight challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016