J-S33017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES STYNE HASKINS | : | |
| | : | |
| Appellant | : | No. 163 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 6, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008050-2021

BEFORE:     BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:            **FILED: November 7, 2023**

James Haskins (Appellant) appeals from the January 6, 2023, judgment of sentence entered in the Allegheny County Court of Common Pleas, after the trial court convicted Appellant of one count of resisting arrest.[1]  On appeal, Appellant solely challenges the sufficiency of the evidence, alleging the Commonwealth failed to prove that he intended to prevent a public servant from conducting a lawful arrest.  Based on the following, we affirm.

## I.  Facts & Procedural History

The underlying facts concerning the Appellant's conviction are taken from the trial testimony and are summarized as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5104.

On the evening of October 3, 2021, Tarentum Borough Police Officer Jeremy Belusar, was on routine patrol and stopped at a red light in the right lane. *See* N.T., 10/5/22, at 17. Officer Jeremy Belusar observed Appellant's car, a gold sedan, stopped two car lengths behind him in the left lane. *Id.* at 16. Noting this behavior, Officer Belusar ran the vehicle's registration and discovered there was an arrest warrant for the owner of the vehicle – James Haskins. *Id.* Upon learning of the warrant, Officer Belusar initiated a traffic stop. *Id.* The officer "confirmed that the driver was in fact Appellant." Trial Ct. Op. at 3.

Officer Belusar then notified dispatch that he would be initiating the stop and requested additional units as backup. *See* N.T at 17. Officer Belusar activated his overhead lights. Appellant's vehicle abruptly stopped before continuing to the nearest parking lot. Appellant exited his vehicle and "began yelling and advancing aggressively toward [Officer Belusar's] position." *Id.* at 18. The officer observed Appellant clench his fists at his sides and pace back and forth between the two vehicles, demanding to know the reason for the stop. *Id.* Officer Belusar ordered Appellant to "get back in his vehicle[,]" and later, "to get on the ground several times." *Id.* Appellant repeatedly ignored all these commands. *Id.* Consequently, Officer Belusar engaged his taser which had little effect on Appellant. *Id.* at 19. Appellant was able to rip the cords from his body and resumed yelling and pacing angrily. *Id.* Shortly

thereafter, other officers arrived to assist, including Officer Bajack,[2] who commanded Appellant to get down on the ground. *Id.* at 19-20. Appellant again refused to comply, and the officer discharged his taser, which also did not incapacitate Appellant. *Id.* at 19-20.

Eventually, the officers tackled Appellant to the ground, "advising him multiple times to put his hands behind his back." N.T. at 20. Appellant pushed off the ground numerous times, but ultimately, the officers took him into custody. *See id.*

Subsequently, Officer Belusar charged Appellant with resisting arrest, obstructing administration of law or other government function, disorderly conduct, and careless driving.[3]

On October 5, 2022, Appellant, appeared before the Honorable Bruce R. Beemer for a non-jury trial. Officer Belusar and Appellant both took the stand and testified. In his defense, Appellant stated he exited his vehicle and "put [his] hands outstretched" while repeatedly asking the officers why he was pulled over. N.T. at 28. At first, Appellant testified that he did not make any attempts to strike the officers, but later admitted that he exited his vehicle against the officer's direction and advanced toward the officer, in order to "stand his ground." *Id.* at 30, 32. Appellant reasoned that he was emotional

---

[2] Officer Bajack's first name does not appear in the record.

[3] 18 Pa.C.S. §§ 5101, 5503(a)(4); 75 Pa.C.S. § 3714.

given the fact that his vehicle was undergoing repairs and he had a limited amount of power steering fluid left. *See **id.*** at 27-28. He also indicated that he was not aware there was a warrant out for his arrest. *See **id.*** at 31.

At the conclusion of the trial, the trial court found Appellant guilty of resisting arrest, explaining its rationale as follows:

> [O]nce the lawful stop is effectuated and the officers had the information that [Appellant] has an active warrant for another county out for him, [he] simply cannot engage in the act that he did -- which, by his own admission, he did -- which is[:] get out of his vehicle, approach the officer and essentially demand the information that he was looking for, and thereby, not engage in lawful compliance, get on the ground to engage in the other type of questions. . . . And the officer was placed in a position of having to deploy a taser, to gain control of the situation; particularly, when he was isolated as a single officer before the second officer arrived, it's clear that they had to employ means that justified or to overcome their resistance in this case.
>
> I found the testimony credible that he was not compliant. He didn't comply with the orders to get on the ground. Now, maybe in his own mind, he felt he didn't get an answer to a question that he wanted, but they discharged a taser, it didn't cause him to get on the ground and be compliant, it caused him to remove the cords, and he ended up getting tased a second time. And then, when they had to take him to the ground, he was pushing off of the ground, he wouldn't put his hands behind his back. The fact that the officers were not injured does not mean that there was not a substantial risk of bodily injury that was created for one or both of the officers.

N.T. at 42-43 (paragraph break added). The court acquitted him of the remaining charges.

On January 6, 2023, the trial court sentenced Appellant to a term of 18 months' probation. Appellant did not file any post-motions but did file a timely notice of appeal.[4]

## II. Issue

In his sole issue on appeal, Appellant argues there was insufficient evidence to support a finding that he intended to prevent his own arrest. **See** Appellant Brief at 11. Appellant points out that while he "did not comply with the officer's orders to get back in his vehicle or to get on the ground[,]" he did not "advance toward Officer Belusar, aggressively or otherwise." **Id.** at 12-13. He alleges that when the officer wantonly shot him with the taser, he maintains he was merely pacing back and forth and focuses on the fact that he was never told the reason for the stop, stating:

> [T]he mere fact that [Appellant] persistently asked Officer Belusar why he had been pulled over did not establish, beyond a reasonable doubt, that he intended to prevent the officer from discharging his duties. Although [Appellant] was clearly frustrated and upset at the time of the incident, these emotions were not evidence of his defiance and resistance. This is particularly true given the fact that Officer Belusar admitted that [Appellant] was stopped not because of hazardous driving behavior, but because of an unrelated arrest warrant. Furthermore, Officer Belusar admitted that he never told [Appellant] why he had been stopped. Consequently, even in the light most favorable to the Commonwealth as the verdict winner, the evidence failed to sufficiently prove that it was [Appellant]'s conscious object to

---

[4] On February 10, 2023, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed on a timely concise statement on March 3, 2023. The trial court issued a Pa.R.A.P. 1925(a) opinion on April 25, 2023.

cause the result of preventing police from effectuating the arrest. [He] was not even aware of the reason for being pulled over.

*Id.* (record citation omitted).

Moreover, Appellant contends the trial court's reliance on *Commonwealth v. McDonald*, 17 A.3d 1282 (Pa. Super. 2011), is misplaced and its analysis is flawed because the sufficiency issue in *McDonald* concerned the substantial force element of resisting arrest and failed to account for the intent element. *See* Appellant Brief at 12. Appellant also juxtaposes his conduct with instances where defendants attempted to strike or pulled and pushed away from officers. *See id.* at 14, *citing Commonwealth v. Schlier*, 206 EDA 2020 (unpub. memo.) (Pa. Super. Oct. 7, 2020) *and Commonwealth v. Albano*, 166 EDA 2021 (unpub. memo.) (Pa. Super. Nov. 10, 2021). Appellant argues these defendants demonstrated a "specific intent," unlike the instant case, where "there was no evidence that [Appellant] intentionally moved away from the police." Appellant's Brief at 13.

### III. Standard of Review

Our standard of review concerning a sufficiency argument is well-settled.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive

that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Martin***, 297 A.3d 424, 434 (Pa. Super. 2023) (citation omitted).

## IV. The Elements of Resisting Arrest

A person commits the crime of resisting arrest, in relevant part, when "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, [the] person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. "Section 5104 criminalizes two types of conduct intended to prevent a lawful arrest: the creation of a substantial risk of bodily injury to the officer or anyone else or means justifying or requiring a substantial force to overcome." ***Commonwealth v. Clemens***, 242 A.3d 659, 666 (Pa. Super. 2020) (citation & internal quotation marks omitted). Moreover, we note that evidence of "passive resistance requiring substantial force to overcome" has previously been held to provide sufficient evidence to support a resisting arrest conviction. ***Commonwealth v. Thompson***, 922 A.2d 926, 928 (Pa. Super. 2007).

Because Appellant advances an argument that focuses on his alleged lack of intent, we note the following:

As a general rule, therefore, it is not criminal merely to flee arrest. However, where the circumstances of the flight expose

the pursuing officers to substantial danger a conviction for resisting arrest is proper. The statute, it is clear, does not require the aggressive use of force such as a striking or kicking of the officer.

***Commonwealth v. Miller***, 475 A.2d 145, 146 (Pa. Super. 1984) (citations & quotation marks omitted). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Rahman***, 75 A.3d 497, 503 (Pa. Super. 2013) (citation & quotation marks omitted).

### V. Analysis

The trial court explained its rationale for finding Appellant guilty of resisting arrest as follows:

> Appellant does not dispute that Officer Belusar conducted a lawful traffic stop on October 3, 2021 after learning that Appellant had an active warrant. Nor does Appellant contest that he acted in the manner described by Officer Belusar. It is clear from the record, that when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to establish the crime of resisting arrest beyond a reasonable doubt. From the moment Appellant exited his vehicle he created an aggressive and tension-filled situation. Despite multiple orders and the display and deployment of a taser by Officer Belusar, Appellant persisted in his actions because of his desire to find out why he was pulled over. Appellant never changed his stance, even after Officer Belusar later displayed his firearm and an assisting officer also deployed his taser. All efforts to force Appellant to comply and to gain control over the situation failed, for no other reason than Appellant's continued aggressive behavior. Even as multiple officers physically took Appellant to the ground, he continued to resist by refusing to place his hands behind his back. ***See Commonwealth v. McDonald***, 17 A.3d 1282 (Pa. Super. 2011) (Conviction for resisting arrest affirmed where the actor was wrestled to the ground by multiple officers, refused commands, and physically resisted while under threat of being tasered, resulting in the ultimate deployment of the taser.)

- 8 -

Trial Ct. Op. at 5-6.

We agree with the trial court's determination. Appellant does not contest the circumstances surrounding the incident, including the fact that he was lawfully stopped based on an outstanding warrant or that he behaved in an aggressive manner towards the officers. Rather, he claims he lacked the necessary intent largely by blaming Officer Belusar for not telling him why he was pulled over. *See* Appellant Brief at 13. Additionally, he attributes his conduct to frustrations stemming from a purported lack of steering fluid to operate his car. *Id.* Appellant's portrayal that he never intentionally exercised aggressive behavior or moved away from the police is misplaced.

A review of the record reveals that once Officer Belusar initiated the traffic stop, Appellant immediately exited his vehicle and "began yelling and advancing aggressively toward" the officer. N.T. at 18. Officer Belusar repeatedly ordered Appellant to "get back in his vehicle[,]" and "to get on the ground[,]" which Appellant ignored. *Id.* Officer Belusar engaged his taser, but Appellant was able to rip the cords from his body and resumed yelling and being noncompliant. *Id.* Additionally, Officer Bajack commanded Appellant to get down on the ground, to which Appellant again refused to comply. *Id.* at 19-20. Officer Bajack also discharged his taser, which did not disable Appellant. *Id.* The officers then tried to tackle Appellant to the ground, "advising him multiple times to put his hands behind his back[,]" but even then, he pushed off the ground numerous times. *See id.* at 20. Appellant's

intent "may be inferred" from his actions and "the attendant circumstances." **Rahman**, 75 A.3d at 503. He repeatedly ignored the officers' instructions and their attempts to immobilize him with taser guns — in essence, his intent was to prevent them from effectuating a lawful arrest.

With respect to Appellant's argument regarding the trial court's reliance on **McDonald**, supra, we find that it is erroneous. While the intent element was not specifically at issue in **McDonald**, it is evident the trial court cited to that case because it had a similar set of facts and the court wanted to point out that this Court previously upheld a resisting arrest conviction based on comparable circumstances. Furthermore, his reference to **Schlier**, 206 EDA 2020 (unpub. memo.), and **Albano**, 166 EDA 2021 (unpub. memo.), as distinguishable because he did not possess any specific intent to strike or physically assault the officers is misplaced. We observe that while the incident may have not created "a substantial risk of bodily injury to [Officer Belusar] or anyone else[,]" the officers had to resort to "substantial force to overcome [Appellant's] resistance." **See Clemens**, 242 A.3d at 666; 18 Pa.C.S. § 5104. Therefore, the Commonwealth was not required to show specific intent to aggressively harm the officers. **See Miller**, 475 A.2d at 146. Moreover, Appellant's actions amounted to "passive resistance[,]" which necessitated the substantial force taken by the officers to overcome his actions. **See Thompson**, 922 A.2d at 928 (defendant resisted arrest when she "interlocked her arms and legs" with her husband and "held her arms tightly beneath" the

- 10 -

officer when he commanded her "several times to put her hands behind [her] back" and officers deployed pepper spray). Accordingly, even though Appellant may not have possessed the specific intent to physically attack the officers, his conduct in preventing the officers from restraining him by use of tasers and other methods provided sufficient evidence to sustain his conviction.

We also point out that Appellant relies on selective testimony in presenting his version of the incident. However, it is clear that the trial court, as finder of fact, had exclusive jurisdiction to weigh all of the evidence, determine the credibility of the witnesses, and resolve any inconsistencies in their testimony. Here, it found Officer Belusar's testimony regarding Appellant's conduct credible. *See* N.T. at 42-43; *see also Martin*, 297 A.3d at 434. Appellant's arguments would have this Court supplant the trial court's credibility determinations with our own, which we cannot to do. *See id.* Viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court's determination that the Commonwealth presented sufficient evidence that Appellant resisted arrest. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/7/2023