J-A16027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY CHARLES GILLETTE | : | |
| | : | |
| Appellant | : | No. 788 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 5, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008866-2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 22, 2024**

Timothy Charles Gillette (Appellant) appeals from the judgment of sentence entered following his jury convictions of resisting arrest and obstructing administration of law; and his non-jury convictions of reckless driving, failure to carry registration card, roadways laned for traffic, exceeding the maximum speed limit, failure to carry driver's license, and investigation by police officers (the summary offenses).[1]  We affirm.

In its opinion, the trial court set forth the relevant factual history:

> On September 21, 2022, around 6:30 p.m., Officer David Reiche of the North Versailles Police Department was working a speed enforcement assignment with VASCAR[, Visual Average Speed Computer and Recorder,] on Route 30 (Lincoln Highway) when he observed [Appellant's] white Kia Sportage straddling the double yellow line with more than half of the vehicle in the

---

[1] 18 Pa.C.S.A. §§ 5104, 5101; 75 Pa.C.S.A. §§ 3736(a), 1311(b), 3309(a), 3362(a)(3), 1511(a), 6308(a).

opposing lane of travel. [Appellant] was also driving the vehicle in excess of the posted speed limit. Officer Reiche activated the VASCAR unit and recorded the vehicle traveling 70 miles per hour in a 40 mile per hour posted zone. [Officer Reiche] further determined that [Appellant] was driving recklessly and failing to maintain his vehicle in its own lane. [Officer Reiche] pulled behind [Appellant's vehicle] at a red [traffic] light and [Appellant], instead of immediately pulling over, instead made a right onto another road and [then,] a left turn [i]nto a Speedway gas station parking lot where he pulled along the curb.

Officer Reiche approached [Appellant's] vehicle[,] but [Appellant] would only lower his window half an inch to an inch and asked Officer Reiche "what do you want?" [Officer] Reiche explained the reason for the stop and asked [Appellant] to provide his driver's license, registration, and proof of insurance. [Appellant] replied "absolutely not" and continued to smoke cigarettes, filling the car with cigarette smoke. [Appellant] was agitated and confrontational. He claimed that he was not driving, he was traveling, and that he was not operating in a commercial capacity. While refusing to supply the requested documents[, Appellant] asked the officer 2 or 3 times to "articulate his auspicion" [*sic*], asked if he was being detained, and demanded that he be read his rights[. Officer] Reiche noticed that [Appellant's] eyes were bloodshot and gl[a]ssy, his speech was slurred, and after [Appellant] asked him to articulate his ["]auspicion[", Officer] Reiche suspected that [Appellant] may have been driving under the influence. Officers continued to request that [Appellant] step out of his vehicle and requested that he not escalate the situation. [Appellant] continued to ignore their commands and continued to fill the vehicle compartment with cigarette smoke while recording the events on his own [video recording device[2]]. [Appellant] was advised that he would be placed under arrest for obstructing administration of law. [Appellant] asked if officers were going to break his window. [Officer] Reiche told [Appellant the police] did not want to do that and asked him over and over to please exit the vehicle. [Appellant] held his finger on the lock button while officers broke the window[,] … unlocked the door[,] and gained access to the car. After [Appellant] was removed from the vehicle[,] Officer

---

[2] The parties refer to this device as a body camera. ***See*** N.T., 4/25-27/23, at 296.

- 2 -

Reiche could smell the odor of alcoholic beverage coming from [Appellant's] person. [Appellant] was also placed under arrest for suspicion of [driving under the influence (DUI)]. [Appellant] refused both a [preliminary breath test] and field sobriety testing. He was read the [PennDOT] DL-26 [implied consent form] verbatim and refused chemical testing.

Trial Court Opinion, 10/12/23, at 2-3 (unnumbered) (citations to record omitted; footnote added). The Commonwealth charged Appellant with the above-described offenses, as well as DUI and driving with a suspended license (DUI-related).[3]

During the bifurcated trial, which took place April 25-27, 2023, the Commonwealth introduced Officer Reiche's dash camera's video recordings. **See** N.T., 4/25-27/23, at 227-28 (wherein the Commonwealth moved to admit the dash camera's footage as Commonwealth's Exhibit 1, and defense counsel stipulated to its authenticity). Appellant also introduced the video recording taken by Appellant during the interaction.[4] **See id.** at 295-96 (acknowledging stipulation that the "video was recorded by [Appellant] from inside his vehicle, recorded on a body cam[era] device owned by [Appellant]. And the video … was uploaded by [Appellant] to his YouTube page which is publicly available to be viewed."); **id.** at 296-97 (playing video for the jury).

---

[3] 75 Pa.C.S.A. §§ 3802(a)(1), 1543(b)(1)(i).

[4] The parties did not formally name this exhibit during trial. For purposes of this memorandum, we will refer to Appellant's video recording as "Defense Exhibit."

Following trial, a jury convicted Appellant of resisting arrest and obstructing administration of law, and acquitted Appellant of DUI. The trial court found Appellant not guilty of driving with a suspended license (DUI-related), as Appellant's driving record was not entered into evidence. The court convicted Appellant of the remaining summary offenses. At the close of trial on April 27, 2023, the trial court immediately sentenced Appellant to 6 to 12 months in jail for his resisting arrest conviction, and a consecutive 6 to 12 months in jail for his obstructing administration of law conviction. The court awarded Appellant 63 days' credit for time served. For the summary offenses, the trial court imposed fines.

Appellant filed a timely post-sentence motion arguing the trial court should have imposed concurrent jail terms, because his resisting arrest and obstructing administration of law offenses arose from a single act. Appellant also argued his convictions were against the weight of the evidence and requested a new trial. On June 5, 2023, the trial court denied Appellant's request for a new trial, but granted Appellant's motion challenging the consecutive nature of his sentences. The court's amended sentence imposed the sentences concurrently.

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.[5]

---

[5] Appellant was granted parole on September 12, 2023.

Appellant raises the following issue for review:

Whether [Appellant's] conviction for Resisting Arrest must be reversed where the Commonwealth failed to prove, beyond a reasonable doubt, that [] the police were required to employ substantial force to overcome his passive resistance?

Appellant's Brief at 6 (numbering omitted).

Appellant argues he displayed only "passive resistance" by refusing to open his car door. *Id.* at 20. Appellant claims that, while the officers' act of breaking of his car window could constitute substantial force, the officers were not "required" to employ the force to overcome his noncompliance. *Id.* at 21. According to Appellant, he "willingly allowed himself to be guided out of the car[,]" handcuffed, and directed to the police car. *Id.* at 22. Appellant suggests his actions merely inconvenienced or slightly delayed the officers. *Id.* at 24.

The Commonwealth counters the officers' use of force was necessary under the circumstances, where police "gave [A]ppellant numerous opportunities to comply with their commands and he refused[.]" Commonwealth Brief at 8.

We review challenges to the sufficiency of the evidence with great deference to the credibility determinations of the fact finder:

The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances

established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

The offense of resisting arrest is established when

a person …, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, … creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104. Thus, "Section 5104 criminalizes two types of conduct intended to prevent a lawful arrest: the creation of a substantial risk of bodily injury to the officer **or** means justifying or requiring a substantial force to overcome." *Commonwealth v. Soto*, 202 A.3d 80, 95 (Pa. Super. 2018) (emphasis in original).[6] "This statutory language does not require the aggressive use of force such as striking or kicking of the officer." *Commonwealth v. McDonald*, 17 A.3d 1282, 1285 (Pa. Super. 2011) (citation and quotation marks omitted).

---

[6] Appellant does not challenge the validity of his arrest.

While not stated specifically in its opinion, it is apparent that the trial court evaluated Appellant's claim under the second portion of Section 5104, *i.e.*, means justifying or requiring a substantial force to overcome. Trial Court Opinion, 12/12/23, at 4 (unnumbered) (finding that after Appellant refused to comply with the officers' repeated requests to exit his vehicle, the officers "eventually had to break the passenger window to gain access to unlock the doors and pull [Appellant] from the vehicle."); **see also** Commonwealth's Brief at 3 (indicating Appellant employed means justifying a substantial force to overcome).

In **McDonald**, the appellant fled from approaching officers, prompting a foot chase through traffic. **McDonald**, 17 A.3d at 1284, 1286. The appellant fell, and two officers held him down. **Id.** at 1284. When the appellant continued to struggle, an officer threatened to taser him. **Id.** "[The a]ppellant ultimately complied after police used a taser to effectuate the arrest." **Id.** at 1286. This Court concluded the evidence supported the appellant's resisting arrest conviction, as police were required to use substantial force to arrest him. **Id.** at 1285-86.

In **Commonwealth v. Thompson**, 922 A.2d 926 (Pa. Super. 2007), this Court concluded the appellant's "passive resistance" constituted the crime of resisting arrest, because it required substantial force to overcome. During their interaction with police, the appellant and her husband "interlocked their arms and legs and refused to respond to [the officer's] verbal commands to release their hands." **Id.** at 927. Officers struggled for several minutes to

pry the appellant from her husband, before ultimately deploying pepper spray. *Id.* Noting the officer's testimony that his attempts to arrest the couple left him exhausted, this Court concluded the evidence sufficiently established the appellant resisted arrest through conduct requiring substantial force to surmount. *Id.* at 928.

Moreover, and most analogously, in *Commonwealth v. Clemens*, 242 A.3d 659 (Pa. Super. 2020), the appellant resisted arrest by refusing to exit his vehicle upon the officer's request. The appellant was involved in a DUI-related car accident to which Pennsylvania State Troopers responded. *Id.* at 662. The appellant refused to exit his vehicle despite multiple commands by troopers. *Id.* at 663. When troopers attempted to remove the appellant from his vehicle, appellant "held onto the steering wheel[ and] locked himself into position with his feet[.]" *Id.* This Court concluded there was sufficient evidence to support the appellant's resisting arrest conviction, because troopers "testified to the extreme efforts required to remove [the appellant] from the vehicle, including the use of a taser." *Id.* at 667.

Here, our review of the record—including the recordings from Officer Reiche's dash camera and Appellant's body camera—confirms that Appellant was verbally combative throughout the course of the traffic stop. Officer Reiche explained why he had stopped Appellant and requested Appellant's documentation. Appellant repeatedly refused to comply with Officer Reiche's lawful requests. Officer Reiche asked Appellant several times to exit the vehicle; Appellant refused and held down the door lock. *See* N.T., 4/25-

- 8 -

27/23, at 255 (wherein Officer Reiche testified, "I gave [Appellant] numerous chances. I believe I said the words last chance, last chance, last chance, five, six, maybe more times."). Officer Reiche explained Appellant would be arrested for obstructing administration of justice and advised Appellant that officers would break Appellant's window if his noncompliance continued. *See* Defense Exhibit (confirming Officer Reiche gave Appellant several opportunities to comply; Officer Reiche warned Appellant multiple times that officers would breach his window if he refused to exit the vehicle; and Appellant stated, "You're gonna have to break it").

Though Appellant did not physically harm or engage with Officer Reiche, we reiterate that the offense of resisting arrest does not require physical aggression or force. *McDonald*, 17 A.3d at 1285. Indeed, even "passive resistance" may support a resisting arrest conviction, so long as it requires substantial force to overcome. *See Thompson*, 922 A.2d at 928. We conclude the evidence in this case, viewed in the light most favorable to the Commonwealth as the verdict winner, supports a finding that Appellant's resistance (persistent noncompliance with Officer Reiche's commands, refusal to exit his vehicle, and holding down the door lock) required a substantial force (breaking a window) to overcome. *See Clemens*, 242 A.3d at 667. Thus, Appellant's sole claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/22/2024