J-S31013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVE BROTHERS, | |
| Appellant | No. 1460 MDA 2015 |

Appeal from the Judgment of Sentence December 23, 2014
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001244-2014

BEFORE:  SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 10, 2016**

Appellant, Steve Brothers, appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County on December 23, 2014.[1]  We affirm.

The trial court summarized the factual history of this case as follows:

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] To the extent Appellant purports to appeal from the July 29, 2015 order denying his post-sentence motion, we note that in a criminal context, an appeal properly lies from the judgment of sentence, not an order denying post-sentence motions.  **See Commonwealth v. Dreves**, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*) (in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of a post-sentence motion).  The caption correctly reflects that the appeal is taken from the December 23, 2014 judgment of sentence.

On April 27, 2014, [Appellant] knocked on Ms. Kaitlyn Viglin's apartment door asking if he could use Ms. Viglin's cellphone at about 3:00 a.m. When Ms. Viglin declined to allow [Appellant] to use her cellphone, the witness described [Appellant] [as] "freaking out" and "screaming like a nut." A short time later, [Appellant] crossed the street and began kicking the doors of the Bianchi home, as was seen by both Ms. Viglin and another witness for the Commonwealth, Mr. Tyler Cox. [Appellant] was quoted by Mr. Cox as stating "I pay my bills" while kicking the door of the Bianchi home.

Through the testimony of Mr. Alan Bianchi it was revealed that [Appellant] attempted to kick in not one but three doors of the Bianchi home. Mr. Bianchi was upstairs in his bed when he heard pounding coming from downstairs. [Appellant] started by kicking the basement door then moved on to kicking the side door and ultimately the front door of the Bianchi home. The doors of the home were damaged by [Appellant's] kicking and work boot footprints were left on the doors as well. Neither Alan Bianchi nor his mother Helen, who also lived in the home, knew [Appellant] or had at any time given him permission to enter their home.

At this point the Carbondale Area Police were called by both Alan Bianchi and Kaitlyn Viglin. The calls to 911 dispatch were placed at 3:30 a.m. by Mr. Bianchi and at 3:40 a.m. by Ms. Viglin. Officers from the Carbondale Police Department then responded to a "burglary in progress" at 14 Froble Street, Simpson, that address being the Bianchi home. Carbondale Area Police [were] given the description of the perpetrator as a white male wearing pajama pants who had been attempting to kick in his neighbor's door. At the scene several witnesses stated to responding officer that the person kicking the Bianchi's doors was [Appellant]. A search then began for [Appellant] starting in his apartment, with officers looking anywhere a person would be able to conceal themselves. The search then went into the neighborhood and surrounding area and included several officers all looking for [Appellant]. Officers observed boot prints on several of the Bianchi doors as well as a glove by the side of the house and a hat towards the rear of the house.

During the search, Officer Fred Colona[2] of the Carbondale Area Police Department saw a dark figure run across the street about a block from where he was standing and run toward [Appellant's] apartment. Upon return to [Appellant's] apartment Officer Colona found the door, which he had left open, now closed. Officer Colona looked into the apartment and identified [Appellant] at which point [Appellant] ran towards the back of the house and Officer Colona called for backup. As two other police officers knocked and announced at the front door of [Appellant's] apartment, Officer Colona, looking from the backyard through a missing window screen, saw [Appellant] run into the kitchen and crouch down behind a cabinet. Officer Colona yelled "Police" and "show me your hands" to which [Appellant] complied with neither command and remained hidden behind the cabinet. Officer Colona then repeated his command of "show me your hands" four more times with [Appellant] still refusing to comply.

At this point Officer Colona knew that the other two officers who had entered through the front door of [Appellant's] apartment would soon be encountering [Appellant] in the kitchen and Officer Colona did not know if [Appellant] was concealing a weapon because he would not show his hands. Officer Colona then deployed his taser from outside, through the missing window, and at [Appellant] to which upon receiving a shock from the taser [Appellant] still did not comply with police commands. [Appellant] was then shocked again and able to be handcuffed while kicking and screaming by Officer Colona and others. When [Appellant] was taken into custody he had no shoes on, but officer[s], on their way out of the apartment observed a pair of work boots which appeared to match the footprints on the Bianchi doors. Carbondale Area Police seized the boots.

Trial Court Opinion, 11/10/15, at 2-5.

Following a jury trial, Appellant was convicted of one count of criminal attempt to commit burglary, one count of criminal attempt to commit

_____

[2] We note that the trial court's spelling of Officer Colona differs from that used in the notes of testimony from trial.

criminal trespass, and one count of resisting arrest. On December 23, 2014, Appellant was sentenced to an aggregate term of three to six years in a State Correctional Institution, plus two years of special probation.

Appellant filed post-sentence motions, which the trial court denied by order entered July 30, 2015. Appellant filed a notice of appeal on August 24, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.    Whether, where the evidence did not support an inference [of] intent to commit a crime within a dwelling, Appellant's conviction on attempted burglary is against the weight and sufficiency of the evidence?

II.    Whether, where Appellant took no affirmative actions to harm officers and merely fled the scene of a crime, Appellant's conviction on resisting arrest is against the weight and sufficiency of the evidence?

III.    Whether, where the court failed to articulate aggravating factors on the record on sentencing and failed to weigh the mitigating factors present, the court erred in sentencing Appellant outside of the aggravated range.

Appellant's Brief at 7 (full capitalization omitted).

In his first issue, Appellant argues that the Commonwealth failed to establish that Appellant had "the intent to commit a crime" in the residence at issue in this case. Appellant's Brief at 13. Appellant asserts that the only pieces of evidence indicative of guilt in this case are: 1) Appellant's banging on and damaging of the doors of the home and 2) Appellant's flight. *Id.* at 15. Appellant contends that these facts are insufficient to establish the requisite intent to commit a crime needed for a charge of attempted

burglary.[3]  **Id.**  Accordingly, Appellant maintains that a judgment of acquittal

must be entered as to this offense.  **Id.** at 13.

The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s].  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Estepp**, 17 A.3d 939, 943-944 (Pa. Super. 2011).

A person commits the offense of burglary "if, with the intent to commit

a crime therein, the person . . . enters a building or occupied structure, or

separately secured or occupied portion thereof that is adapted for overnight

accommodations in which at the time of the offense any person is present."

---

[3] Although Appellant asserts the issue presented as being that the burglary conviction is against the weight and sufficiency of the evidence, Appellant fails to develop any argument on the weight of the evidence claim regarding this conviction.  Accordingly, we find any weight of the evidence claim waived.

18 Pa.C.S. § 3502(a)(1). A person commits an attempt when, "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "Intent may be proved by direct evidence or inferred from circumstantial evidence." **_Commonwealth v. Galindes_**, 786 A.2d 1004, 1009 (Pa. Super. 2001).

The evidence of record reflects the following facts. In the early morning hours of April 27, 2014, Appellant knocked on his neighbor's door. N.T., 10/8/14, at 58. Kaitlyn Viglin answered the door, and Appellant asked to use her cellphone. **_Id._** Ms. Viglin testified that after she told Appellant that he could not use the cellphone, he "freaked out" by screaming and being loud. **_Id._** at 58-59. At that point, Ms. Viglin closed the door on Appellant. **_Id._** at 58. Appellant returned to his apartment. **_Id._** at 59.

Approximately one hour later, Ms. Viglin heard banging and looked outside to see Appellant at her neighbor's house across the street. **_Id._** at 59. When Ms. Viglin went outside to investigate, she saw Appellant kicking the door on the neighbor's house, and she heard a woman screaming, "[y]ou can't do that. I'm calling the cops." **_Id._** at 59-60. Ms. Viglin's boyfriend, Tyler Cox, and her brother then exited Ms. Viglin's residence and confronted Appellant. **_Id._** at 59. Ms. Viglin then called the Carbondale Police. **_Id._** Ms. Viglin testified that when the police arrived, Appellant "took off." **_Id._** at 62.

Tyler Cox, who lived with Ms. Viglin at the time of the incident, also testified. **_Id._** at 78-79. Mr. Cox testified that at approximately 4:00 a.m. on

April 27, 2014, he heard noise outside of the residence. *Id.* at 79. After walking outside to investigate, he saw Appellant trying to kick in the door to the neighbor's house across the street. *Id.* Mr. Cox approached Appellant and asked him what he was doing. *Id.* In response, Appellant indicated something to the effect that "he pays his bills." *Id.* Appellant began screaming and yelling. *Id.* Mr. Cox testified that at that point, Ms. Viglin went inside to call the police. *Id.* Mr. Cox stated that Appellant left the scene when he found out the police were on their way. *Id.* at 79-80.

Alan Bianchi, who lived in the house across the street from Ms. Viglin's apartment building, also testified. He lived at 14 Froble Street with his Mother, Helen Bianchi, on the date of the incident. N.T., 10/8/14, at 86-87. Mr. Bianchi testified that at approximately 2:00 a.m. on April 27, 2014, he was awakened by pounding and banging. *Id.* at 87-88. As he went to the door, Mr. Bianchi testified that not only was someone banging on the door, he thought somebody was "breaking the door in." *Id.* at 88. Mr. Bianchi first heard the kicking at the door on the side of the house. *Id.* at 90. Mr. Bianchi discovered that as the banging continued, a second door, the back door of the residence, was "being broken into." *Id.* at 88. Mr. Bianchi attempted to block the door from inside. *Id.* Mr. Bianchi yelled through the door that the police had been called and were on their way. *Id.* Mr. Bianchi then heard pounding and banging at a third door, the front door. *Id.* at 89. Mr. Bianchi testified to the damage done to two of the doors. *Id.* at 91, 92,

97. Both Mr. Bianchi and his mother testified they did not know Appellant or give Appellant permission to enter their home. *Id.* at 104-105, 118.

Viewing the evidence in the light most favorable to the Commonwealth, we find that the jury's conclusion that Appellant intended to enter the Bianchis' home and commit a crime therein is supported by sufficient evidence. Appellant's attempt to gain entry by kicking the side, back, and front doors of the home constituted a substantial step toward committing burglary. Moreover, the circumstances surrounding the incident, the early-morning hour, the kicking of the doors, the fleeing when confronted and told that police were called and on the way, all allowed the jury to reasonably infer Appellant possessed the intent to commit a crime. *See Galindes*, 786 A.2d at 1009-1010 (evidence, including defendant's kicking the backdoor of the residence, the late hour at which he made his attempt, the fleeing when confronted and the firing of shots was sufficient to sustain the conviction of attempted burglary); *Commonwealth v. Willetts*, 419 A.2d 1280, 1282 (Pa. Super. 1980) (evidence, including defendant's attempt to break padlock on garage, late hour at which he made his attempt, and his flight upon arrival of police, was sufficient to sustain conviction of attempted burglary). Thus, the evidence sufficiently supports the attempted burglary conviction.

In his second issue, Appellant argues that this Court should vacate his conviction and sentence for resisting arrest because the verdict is against

the weight and sufficiency of the evidence. Appellant's Brief at 16. Appellant avers that the resisting arrest charge was based on the single fact that Appellant hid from police. *Id.* at 17. Appellant further maintains that his hiding was part of his flight, which cannot constitute resisting arrest. *Id.* Appellant argues that he never struck the officers; never attempted to strike, touch, or harm any of the officers; did not threaten or make any remarks to officers; did not have a weapon; did not "even squirm, punch, kick, or do anything similar to any of the officers upon being arrested." *Id.* Accordingly, Appellant maintains, "this cannot constitute resisting arrest." *Id.* Appellant also contends that there were no circumstances justifying or requiring the officers to use substantial force to overcome his resistance. *Id.* Appellant posits that because he was not doing anything to place any officer in danger, there was no justification for use of force. *Id.*[4]

The offense of "resisting arrest" is defined in 18 Pa.C.S. § 5104, as follows:

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone

---

[4] Again we note that despite Appellant's assertion in his issue presented that the resisting arrest conviction was also against the weight of the evidence, Appellant does not develop any argument on the weight of the evidence claim. Thus, we deem any weight of the evidence claim as to the resisting arrest conviction waived.

>   else, **or employs means justifying or requiring substantial
>   force to overcome the resistance.**

18 Pa.C.S. § 5104 (emphasis added). This statutory language "does not require the aggressive use of force such as a striking or kicking of the officer."[5] ***Commonwealth v. McDonald***, 17 A.3d 1282, 1285 (Pa. Super. 2011).

Here, the evidence reflects that Appellant fled the scene when he was advised that the police had been called and were on their way. Officer Colonna testified that on the night in question, he was on duty and received a call in the early morning hours regarding a possible burglary in progress at 14 Froble Street in Simpson. N.T., 10/8/14, at 154-155. In the information he received, Officer Colonna was advised that a white male wearing pajama pants was attempting to kick in the door of the residence at 14 Froble Street. ***Id.*** at 155. Upon arriving at the scene, Officer Colonna talked to several witnesses who stated that Appellant was the individual attempting to kick in the door of the residence. ***Id.*** at 157. Officer Colonna began his search for Appellant at Appellant's apartment. ***Id.*** at 158. When he arrived at Appellant's apartment, the apartment door had been left ajar a few

---

[5] We note that this Court, in ***Commonwealth v. Miller***, 475 A.2d 145, 146 (Pa. Super. 1984), refused to follow dictum in this Court's prior decisions in ***Commonwealth v. Eberhardt***, 450 A.2d 651 (Pa. Super. 1982) and ***Commonwealth v. Rainey***, 426 A.2d 1148 (Pa. Super. 1981) that suggested the Commonwealth must show the defendant kicked or struck an officer to sustain a conviction for resisting arrest. ***Miller***, 475 A.2d at 146 n.4.

inches. *Id.* Officer Colonna announced himself and pushed the door open, entering the apartment. *Id.* After checking Appellant's apartment, Officer Colonna determined that Appellant was not in the apartment. *Id.* Upon leaving Appellant's apartment, Officer Colonna left the front door slightly open, as he had found it upon first entering. *Id.* at 159. Officer Colonna and other officers began to search the neighborhood. *Id.* at 160.

After searching for approximately one hour, while Officer Colonna was walking along Froble Street he observed a dark figure run across the street toward Appellant's apartment. *Id.* at 172-175. When officers approached Appellant's apartment door, the door was closed. *Id.* at 175. Of relevance was the fact that after searching it initially, Officer Colonna had left the door open. *Id.* Upon peeking through Appellant's door, Officer Colonna was able to identify Appellant inside the apartment. *Id.* at 176. Officer Colonna knocked on the door in an attempt to have Appellant open the door. *Id.* at 175.

Appellant moved to the back of the residence. N.T., 10/8/14, at 176. The officers surrounded Appellant's apartment. *Id.* Officer Colonna then moved to the back of the residence and located himself near a large open window to the kitchen. *Id.* From his position at the large window to the kitchen, Officer Colonna was able to observe Appellant. *Id.* Appellant attempted to hide in the kitchen behind a cabinet. *Id.* at 176-177. The officers knocked on the door and announced, "Carbondale Police." *Id.* at

176. At that point, Officer Colonna had his flashlight on and was yelling at Appellant to "show me your hands." *Id.* at 177. Officer Colonna testified that he was approximately ten to twelve feet from Appellant and that there was no window in the pane. *Id.* at 182, 196. Officer Colonna explained the only thing separating him from Appellant was "air." *Id.* at 200.

Officer Colonna had directed Appellant to show him his hands because Officer Colonna could not see Appellant's hands and was concerned about Appellant possessing a weapon since the other officers were breaching Appellant's front door and would be approaching Appellant's location. N.T., 10/8/14, at 178-179. Officer Colonna testified that he was concerned for the officers' safety. *Id.* at 179. Officer Colonna continued to order Appellant to show the officer his hands, but Appellant failed to comply. *Id.* Officer Colonna warned Appellant that he was going to deploy his taser. *Id.* Appellant continued to refuse to comply. *Id.* Officer Colonna deployed the taser through the open window. *Id.* Even though Appellant fell to the ground after being tased, he still failed to show Officer Colonna his hands. *Id.* Officer Colonna tased Appellant again. *Id.* at 180. At that point, other officers were able to get on top of Appellant and handcuff him. *Id.*

As noted, Appellant argues that his mere flight and hiding from police, and the fact that he did not injure or place any officer in danger, does not constitute resisting arrest. We disagree. In *Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007), this Court found that

even a defendant's passive resistance that required police to use substantial force to arrest her was sufficient to sustain a conviction for resisting arrest. After officers informed Thompson and her husband that they were under arrest for disorderly conduct, the couple tried to leave but were forced to the ground by the police. *Id.* at 927. Thompson and her husband did not fight or use force on the officers, but interlocked their arms and legs to prevent officers from taking them into custody. *Id.* This Court found that the officers had to use substantial force in prying the couple apart and upheld Thompson's conviction for resisting arrest. *Id.* at 928. ***See also McDonald***, 17 A.3d at 1286 (holding evidence that defendant ran from police and refused to submit to their authority was sufficient to sustain conviction of resisting arrest because police were required to use substantial force to overcome his resistance).

Likewise, in the case *sub judice*, there is sufficient evidence to show that police were required to use substantial force to arrest Appellant. Upon realizing the police had been called to the scene, Appellant fled on foot. Appellant hid from officers, causing them to search the neighborhood for him. Upon being viewed, Appellant ran from officers to his apartment. Once in his apartment, Appellant hid in the kitchen. Despite Officer Colonna shining his flashlight on Appellant and verbally directing Appellant to show his hands from approximately twelve feet away through an open window, Appellant refused to submit to the officer's authority. Even after Officer

Colonna threatened to taser Appellant, he still refused to submit to his authority. Only after Appellant had been tasered twice and forced to the ground were multiple officers able to get on top of Appellant in order to effectuate the arrest. Thus, the jury could reasonably conclude that Appellant employed means justifying or requiring substantial force to overcome Appellant's resistance to arrest. 18 Pa.C.S. § 5104. Accordingly, we find there was sufficient evidence to convict Appellant of resisting arrest.

In his final issue, Appellant argues that this Court must vacate his sentence because the trial court did not articulate specific factors to justify Appellant's sentence that was beyond the aggravated range on the attempted burglary conviction.[6] Appellant's Brief at 18. Appellant asserts that he had a prior record score of three. *Id.* at 20. He maintains that the standard range sentence for attempted burglary was eighteen to twenty-four months, and the aggravated range for the attempted burglary was eighteen to thirty-three months. *Id.* Appellant argues that the trial court erred in sentencing him to three to six years on the attempted burglary charge, which was beyond the aggravated range. *Id.* Appellant argues that the trial court did not place specific factors on the record justifying a sentence "in the

_____

[6] Appellant does not contest the sentences imposed at the other two convictions. Appellant asserts that "Appellant was properly sentenced to two (2) years of probation on the Resisting Arrest charge. . . . The [c]ourt properly found that the Criminal Trespass charge merged with the Burglary charge." Appellant's Brief at 20.

- 14 -

aggravated range, let alone outside of that range." *Id.* at 21. As a result, Appellant argues that he is "unsure of the [c]ourt's reason for its sentence." *Id.*

Appellant's issue challenges the discretionary aspects of his sentence. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question

is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912–913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met: Appellant brought a timely appeal, raised the challenges in a post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his Pa.R.A.P. 2119(f) statement, Appellant argues that he was sentenced outside the aggravated range of the guidelines, and the trial court "failed to place sufficient reasons for even an aggravated range sentence on the record." Appellant's Brief at 12. A substantial question exists where a defendant alleges that the sentencing court failed to provide reasons on the record for imposing a sentence outside the guidelines. *Commonwealth v. Monahan*, 860 A.2d 180, 181 n.1 (Pa. Super. 2004). Because Appellant has presented a substantial question, we proceed with our analysis.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. *Id.* Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id.*

This Court has stated that in exercising its discretion at sentencing, "the trial court must consider the character of the defendant and the particular circumstances of the offense, and must impose a sentence that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." *Commonwealth v. Oath*, 735 A.2d 709, 711 (Pa. Super. 1999). More specifically, "the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). When the "sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court 'was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors.'" *Moury*, 992 A.2d at 171. Additionally, "where a sentence is within the

standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Id.*

> Where an excessive sentence claim is based on deviation from the sentencing guidelines, we look for an indication that the sentencing court understood the suggested sentencing range. *See Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super.2003). When there is such an indication, the sentencing court may deviate from the sentencing guidelines
>
> > to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.
>
> *Id.* (internal quotation marks and citation omitted). Thus, simply stated, the sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside the guidelines as long as the sentencing court places its reasons for doing so on the record. *Id.*

*Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citing

*Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa. Super. 2005)).

The trial court stated the following in explaining the reasons for the sentence imposed:

> With respect to Count One, sir, criminal attempt to commit burglary, person present, this is a felony of the first degree. It has an offense gravity score of eight, and by my calculations and by the pre-sentence writer's calculations, you have a prior record score of 3. The standard range, sir, is 18 to 24 months, and the aggravated range is 33 months.
>
> It is going to be the sentence of this court that you be sentenced for Count one to three to six years in a state correctional institution.

* * *

With respect to Count 2, sir, criminal attempt to commit trespass, I will accept your attorney's statements that this sentence merges with Count One, so there will be no sentence imposed with respect to Count Two, criminal trespass.

The third count, I believe it's Count Four on the information, resisting arrest, sir, that particular case has an offense gravity score of two, prior record score of three. The standard range is [restorative sanctions ("RS")] to four months.

It's going to be the sentence of this court, sir, that you be sentenced to serve a period of two years of special probation.

This sentence, sir, is going to run consecutive to the sentence imposed in Count One, so your aggregate sentence, sir, is three to six years in a state correctional institution followed by two years of special probation.

* * *

Sir, the reasons for the sentences that I'm imposing here today is that these sentences are consistent with the protection of the community, they are consistent with recognizing the gravity of the offense, they are consistent with recognizing the serious nature of the offense, they are also consistent with recognizing your need for rehabilitation. That is why [t]he [c]ourt fashioned a tail on your sentence to afford you court-monitored supervision so that when you are out you will have that extra push to help you stay on the straight and narrow and adjust to life back on the street.

In addition, sir, this court sentenced you in the aggravated range because you were arrested just 67 days after your release from state prison on a prior offense.

In addition, I've taken into consideration your lengthy criminal history which spans almost 17 years beginning at age 11; however, I do want to commend you that there was a two-year period in '08 and '09 when you did not – that you were able to maintain a law abiding status while out on the street. So that means you can do it and I hope that you will do it again, sir.

N.T., Sentencing, 12/23/14, at 41-44.

After the trial court advised Appellant of his post-sentence rights, the following conversation occurred between Appellant's counsel and the trial court:

> [Appellant's counsel]: Judge, with regard to the sentence, that was above the aggravated.
>
> [Trial Court]: Well, I know, anything above 33, 33 and above is aggravated, so I appreciate that, [counsel].
>
> [Appellant's counsel]: The aggravated range on the presentence report is 33.
>
> [Trial Court]: 33, right.
>
> [Appellant's Counsel]: So it's above the aggravated.
>
> [Trial Court]: Okay.
>
> [Appellant's counsel]: Just so the record notes my objection.
>
> [Trial Court]: Okay. I note it. Thank you.

*Id.* at 45-46.

Accordingly, the record reflects that the trial court was aware of the sentencing guidelines and chose to sentence Appellant beyond the aggravated range. The trial court placed its reasons for Appellant's sentence on the record. Moreover, the trial court had the benefit of a pre-sentence investigation report. Thus, we cannot agree that the trial court abused its discretion in sentencing Appellant. Appellant is entitled to no relief on his third claim.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2016