**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 30 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered May 9, |
| | : | 2023, at No. 176 WDA 2022, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered |
| JARREN CROSBY, | : | November 1, 2021, at No. CP-02- |
| | : | CR-0004015-2020, and remanding. |
| Appellant | : | |
| | : | ARGUED:  October 9, 2024 |

## OPINION

**JUSTICE WECHT**                                         **DECIDED: JANUARY 22, 2025**

A person commits the offense of resisting arrest when, with the intent to prevent a lawful arrest, he or she "employs means justifying or requiring substantial force to overcome the resistance."[1]  Jarren Crosby maintains that his conduct did not rise to this level, because the police response occasioned by his resistance did not amount to "substantial force."  We disagree.  Accordingly, we affirm the order of the Superior Court that upheld Crosby's judgment of sentence.

## I.    Background

On May 8, 2020, Sergeant Aaron Scott and Officer Samuel Greco of the Frazer Township Police Department responded to the scene of a rollover vehicle accident.  They found Crosby and a female companion standing near a Ford Fusion that was overturned on the side of the road.  When asked, Crosby told the officers that he had been driving

---

[1]      18 Pa.C.S. § 5104.

the vehicle. The officers smelled marijuana emanating from the vehicle, as well as from Crosby, and noticed that Crosby's eyes were glassy and bloodshot and that his speech was slurred. Crosby was struggling to walk or stand. The officers directed Crosby to sit on the curb, and he complied. The officers informed Crosby and his companion that they were being detained so that the officers could investigate whether Crosby had been driving under the influence of marijuana. In response, Crosby became agitated, stood up from the curb, and refused to sit back down. Officer Greco attempted to handcuff Crosby. Officer Greco was only able to get one of Crosby's hands into a cuff, because Crosby "started to scream and pull away."[2] Officer Greco then took Crosby to the ground, whereupon Crosby continued to resist. As a result, Officer Greco deployed his taser, performing a "dry stun" close to Crosby's ear.[3] At that point, Crosby finally surrendered his other hand.

Crosby was charged with one count each of driving under the influence ("DUI"); recklessly endangering another person ("REAP"); resisting arrest; disorderly conduct; false identification to law enforcement; and two summary offenses: careless driving and driving at an unsafe speed.[4] The case proceeded to a bench trial. Following the

---

[2]    Notes of Testimony ("N.T."), 11/1/2021, at 49.

[3]    Officer Greco explained the maneuver as follows:

> I attempted to get his other hand into the handcuff, and it was not going well, so I took it upon myself to take him to the ground and then still try to get the handcuffs on him. He refused to give me his other hand, at which point I pulled my Taser out, pulled the cartridge out and did a dry stun close to his ear as a use of force, saying "Give me your hand now."

*Id.* at 50.

[4]    75 Pa.C.S. § 3802(d)(2); 18 Pa.C.S. § 2705; 18 Pa.C.S. § 5104; 18 Pa.C.S. § 5503(a)(1); 18 Pa.C.S. § 4914(a)(1); 75 Pa.C.S. § 3714(a); and 75 Pa.C.S. § 3361, respectively. Crosby initially was charged with DUI pursuant to 75 Pa.C.S. § 3802(a)(1) (driving under the influence of alcohol), but the charge was amended to 75 Pa.C.S. § 3802(d)(2) (driving under the influence of a controlled substance).

Commonwealth's case-in-chief, the trial court granted Crosby's motion for judgment of acquittal on the REAP charge. Crosby was convicted of DUI, resisting arrest, and careless driving. He was acquitted on the remaining charges. In the aggregate, Crosby was sentenced to serve four days in the DUI Alternative to Jail Program and fifteen months' probation. Crosby filed post-sentence motions, which the trial court subsequently denied. He then timely filed a notice of appeal and a concise statement of errors complained of on appeal, challenging, *inter alia*, the sufficiency of the evidence supporting his conviction for resisting arrest.

Before discussing the Superior Court's decision in this case, we review the statute and the relevant case law. The Crimes Code defines resisting arrest as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.[5]

The statute specifies two ways in which a person may commit the offense of resisting arrest. A person violates the statute if he or she either: (1) "creates a substantial risk of bodily injury" to the officer or to another person; or (2) "employs means justifying or requiring substantial force to overcome the resistance."[6] Crosby was convicted based on the second of these variants. Under this variant, the subject conduct—the "means" used by the defendant—is defined by reference to the response that it occasions: "substantial force" on the part of the arresting officer. Substantial force is not defined by the statute, and this Court has yet to interpret the term in this context. This case is the first occasion

---

[5]     18 Pa.C.S. § 5104.

[6]     *Id.*

upon which this Court has reviewed the sufficiency of the evidence for a resisting arrest conviction grounded in the "substantial force" variant of the offense.

The Superior Court has over time developed conflicting case law interpreting this second variant of the resisting arrest offense. In *Commonwealth v. Rainey*,[7] the appellant initially was detained by police, but attempted to flee as officers escorted him to their van. An officer snagged Rainey by a coat sleeve. In response, Rainey "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp."[8] An officer then struck Rainey on the head with a nightstick. When Rainey continued to struggle, a second officer began choking him. Finally, a third officer joined the fray. Together the three officers were able to subdue Rainey.[9]

The Superior Court ruled the evidence insufficient to sustain Rainey's conviction for resisting arrest. The court relied upon comments to the Model Penal Code provision upon which the resisting arrest statute is based.[10] Those comments opine that resisting arrest does not include "minor scuffling not unusual in arrest,"[11] and further state that the

---

[7]    426 A.2d 1148 (Pa. Super. 1981).

[8]    *Id.* at 1149.

[9]    *Id.* at 1148-49.

[10]    More specifically, the court relied upon (1) the comment to the Model Penal Code provision on resisting arrest (then Section 208.31, currently Section 242.2), and (2) Comment 5 to what was then Section 208.30 of the Model Penal Code, on obstruction of the administration of justice, which is specifically cross-referenced in the comment to the resisting arrest provision. *Id.* at 1149-50.

[11]    MODEL PENAL CODE § 208.31 cmt. (AM. LAW INST., Tent. Draft No. 8). This same language appears in a Joint State Government Commission comment to the statute, which was based upon the analogous provision of the Model Penal Code. That comment provides, in relevant part: "This section changes existing law somewhat by not extending to minor scuffling which occasionally takes place during an arrest." 18 Pa.C.S. § 5104 cmt. (JOINT STATE GOV'T COMM'N 1967). Though they may be considered, official comments are not binding on this Court. *See* 1 Pa.C.S. § 1939; *Commonwealth v. French*, 611 A.2d 175, 178 n.8 (Pa. 1992) ("Official Comments may be consulted in the (continued…)

resisting arrest provision was not intended to criminalize efforts to "shake off the policeman's detaining arm."[12]  The Superior Court concluded that Rainey's conduct amounted to nothing more than a "minor scuffle" or an attempt to shake free of the officers' grasp.  Therefore, the court decided, the evidence was insufficient to support a conviction for resisting arrest.[13]

More recent Superior Court cases have ignored *Rainey*'s application of the "minor scuffle" rule.  In *Commonwealth v. Miller*,[14] a "scuffle ensued" after police informed the appellant and his brother that they were being cited for disorderly conduct after causing a disturbance in a bar.[15]  Two officers attempted to restrain the appellant, but he resisted by "straining against them with his arms and the upper part of his body," and then "continued to struggle as the police officers attempted to place him in the rear of a police car."[16]  Ultimately, police officers had to lift the appellant up and push him into the back of the car.  Without mention of the "minor scuffle" language discussed in *Rainey* and in the comment to the resisting arrest statute, the *Miller* court held that the evidence was

---

construction or application of the original provisions of the statute if the Comment was published or otherwise generally available prior to the consideration of the statute by the General Assembly.").

[12]     MODEL PENAL CODE § 208.30 cmt. 5 (AM. LAW INST., Tent. Draft No. 8).

[13]     The *Rainey* court did not specify whether the resisting arrest conviction was premised upon the first or second variant of the offense.  The Superior Court later observed in *Commonwealth v. Eberhardt*—in which the defendant was charged with resisting arrest under the first variant (creating a substantial risk of bodily injury to the officer)—that it was "reluctantly bound" by *Rainey* in such a case.  450 A.2d 651-53 (Pa. Super. 1982).  The *Eberhardt* court concluded that the evidence was insufficient to sustain a conviction under the first variant, emphasizing that the defendant did not "strike or kick anyone, he only attempted to free himself from the officers' grasps."  *Id.* at 653.

[14]     475 A.2d 145 (Pa. Super. 1984).

[15]     *Id.* at 146.

[16]     *Id.* at 146-47 (internal quotation marks omitted).

sufficient to support a conviction for resisting arrest on the facts of that case under either variant of the offense.[17] In post-*Miller* cases, the Superior Court has continued to emphasize the substantial force required to overcome appellants' resistance, rather than focusing upon whether such resistance constituted merely a "minor scuffle."[18] Nonetheless, the Superior Court has not overruled its decision in *Rainey*.

In the meantime, the Superior Court has gone as far as to hold that even the use of "passive resistance" can support a conviction for resisting arrest, so long as that resistance requires or justifies the use of substantial force.[19] In *Commonwealth v. Thompson*, that court focused upon the language of the statute, which "criminaliz[es] resistance behavior that requires substantial force to surmount."[20] As such, the evidence sufficed there to support Thompson's conviction for resisting arrest under the second variant of the offense, where Thompson interlocked arms and legs with her husband, which required the responding officer to pry the couple apart in order to make the arrest.[21]

Before the Superior Court, Crosby argued that *Rainey* and *Eberhardt*[22] are controlling. Crosby argued that, like the appellants in those cases, he had engaged in

---

[17]     *Id.* at 147.

[18]     *See, e.g.*, *Commonwealth v. Clark*, 761 A.2d 190, 193 (Pa. Super. 2000) (finding sufficient evidence in support of conviction for resisting arrest where the defendant, upon being informed that he was under arrest, "assumed a fighting stance," was pepper sprayed, ran from police, slipped and fell, and then continued to resist while on the ground); *Commonwealth v. McDonald*, 17 A.3d 1282, 1285-86 (Pa. Super. 2011) (deeming evidence to be sufficient where, after realizing he had been caught selling drugs to an undercover officer, a defendant fled, slipped and fell, had to be held down by multiple officers, and continued to struggle while on the ground until he was eventually tased).

[19]     *Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007).

[20]     *Id.*

[21]     *See id.*

[22]     *See supra* n.13.

nothing more than a mere "minor scuffle," during which he sought merely to "free himself from the officer's grasp."[23] The Superior Court rejected this argument and affirmed Crosby's conviction. The court noted the two types of conduct criminalized by the statute—creating a substantial risk of bodily injury and employing means requiring or justifying substantial force to overcome the resistance. The court acknowledged that Crosby's actions would not support a conviction premised upon a risk of injury to the officers, but it held that the evidence sufficed to support a conviction for the second variant of the offense. Officer Greco was required to use substantial force to overcome the means used by Crosby: the officer "had to take [Crosby] to the ground and deploy a Taser to place [him] in handcuffs."[24] Citing *Thompson* and *Clark*,[25] and without mention of *Rainey* or *Eberhardt*, the Superior Court concluded that the evidence was therefore sufficient to support Crosby's conviction.[26]

Crosby appealed. We granted *allocatur* in order to resolve the question of what constitutes "substantial force to overcome the resistance" within the meaning of the resisting arrest statute.[27]

---

[23] *Commonwealth v. Crosby*, 176 WDA 2022, 2023 WL 3319389, at *4 (Pa. Super. May 9, 2023) (unpublished).

[24] *Id.*

[25] *See supra* n.18.

[26] Though the Superior Court agreed with the trial court that there was sufficient evidence to support Crosby's conviction, the Superior Court remanded to the trial court to correct a scrivener's error in Crosby's sentencing order. *Id.* at *3 n.4.

[27] The question, as presented by Crosby, states:

In an issue of substantial public importance and first impression with this Honorable Court, what constitutes "substantial force to overcome the resistance" under the Resisting Arrest statute, because the Superior Court's decisions interpreting this language are manifestly inconsistent and unpredictable?

(continued…)

## II.    Arguments

Crosby maintains that the evidence was insufficient to support his conviction for resisting arrest.  Contrary to the premise of the question he presented to us, Crosby now argues that the Superior Court has developed a consistent framework for assessing the sufficiency of resisting arrest convictions, and that the court misapplied that framework to the facts of this case.

Crosby observes that "substantial force" is left undefined in the Crimes Code, and should therefore be interpreted according to its common and approved usage.[28]  He offers various dictionary definitions in an effort to explicate the meaning of "substantial force."[29]  Crosby argues that "substantial force" "requires significant and real physical contact, power, strength, and exertion on the arresting officer's part in order to overcome the defendant's resistance."[30]  Based upon this understanding of the term, Crosby claims that it is not enough that "some" force is required or that an officer must make a threat of force; rather, substantial force—as defined by Crosby—must be required or justified.  Crosby argues that this position is consistent with the Joint State Government Commission comment, which states that the offense does not extend to "minor scuffling."[31]

---

*Commonwealth v. Crosby*, 307 A.3d 1204 (Pa. 2023) (per curiam).

[28]    Crosby's Br. at 18 (quoting *Commonwealth v. Gamby*, 283 A.3d 298, 307 (Pa. 2022)); *see* 1 Pa.C.S. § 1903.

[29]    *See* Crosby's Br. at 18. (citing *Gamby*, 283 A.3d at 307 (collecting cases)).  Crosby offers various dictionary definitions of both "substantial" and "force" in support of his interpretation.  "Substantial" is defined as, *inter alia*: "Of, relating to, or involving substance; material"; "[r]eal and not imaginary; having actual, not fictious, existence"; and "[c]onsiderable in extent, amount, or value; large in volume or number."  *Id.* at 19 (quoting *Substantial*, BLACK'S LAW DICTIONARY (11th ed. 2019)).  "Force" is defined as, *inter alia*, "[p]ower, violence, or pressure directed against a person or things."  *Id.* (quoting *Force*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

[30]    *Id.* at 20.

[31]    *Id.* at 21 (quoting 18 Pa.C.S. § 5104 cmt. (JOINT STATE GOV'T COMM'N 1967)).

In an about-face from the premise of the question that he presented to us, Crosby now argues that the Superior Court has developed a consistent body of case law with respect to resisting arrest based on the second variant of the offense. On one end of the spectrum that Crosby perceives lies the conduct of the appellant in *Rainey*, which amounts to nothing more than a minor scuffle.[32] On the other side are the appellants in the remainder of the Superior Court's case law—*Miller*, *Clark*, *McDonald*, *Thompson*, *Commonwealth v. Lyons*,[33] and *Commonwealth v. Lumpkins*[34]—whose resistance behavior exceeded the bounds of a "minor scuffle." The distinction, according to Crosby, is whether the force that the officers were required to use was substantial.[35]

Crosby argues that the amount of force that was required in order to detain him was not substantial: Crosby complied after Officer Greco pulled out his taser, removed the cartridge, and performed a "dry stun" close to Crosby's ear. Officer Greco's response, in Crosby's view, amounts to nothing more than the threat of force, and is not to be considered substantial force under the statute. Crosby argues that his conduct was nothing more than a "minor scuffle" with police, as in *Rainey* and *Eberhardt*, and that the

---

[32] Crosby places *Eberhardt* on this side of the scale as well. *See* Crosby's Br. at 22-23, 29-30. *Eberhardt*, however, is inapposite, because the defendant was charged with resisting arrest pursuant to the first variant of the offense only, and not the second variant. *Eberhardt*, 450 A.2d at 652.

[33] 555 A.2d 920, 925 (Pa. Super. 1989) (affirming a conviction for resisting arrest where defendant fled an attempted arrest by running into a frigid stream, and, once officers caught up to him, kicked and struggled with them, then went limp and had to be carried out to the riverbank to be handcuffed).

[34] 471 A.2d 96, 98, 100 (Pa. Super. 1984) (affirming a conviction for resisting arrest where, upon being approached by police, defendant pulled out a handgun, struck and kicked the officers as they tried to restrain him, and ultimately grabbed one officer by the shirt and held him at gunpoint before fleeing the scene).

[35] Crosby's Br. at 29-30.

Superior Court erred in its reliance upon *Thompson* and *Clark*.[36]  Moreover, Crosby argues, a response of substantial force—which Crosby suggests would have required deploying the taser more directly or fully—would have been beyond the response required or justified by Crosby's conduct.[37]

The Commonwealth responds that *Rainey* was wrongly decided, and that the Superior Court's case law is otherwise clear and consistent.  In the Commonwealth's view, the conduct of the appellant in *Rainey* amounted to more than a "minor scuffle." There, the appellant continued to struggle and resist the officers' efforts after being struck with a night stick by one officer and choked by another, relenting only after a third officer joined in the fray.  Moreover, the Commonwealth argues, the *Rainey* court erred in relying upon a comment to the Model Penal Code, and one that related to a separate offense (obstruction of the administration of justice) at that.[38]

The Commonwealth adds that *Eberhardt* affords Crosby no relief, because the appellant in that case was charged with resisting arrest based on the other of the two disjunctive variants of the offense—that he created a substantial risk of bodily injury to an officer.  Moreover, the Commonwealth suggests, had the appellant in *Eberhardt* been charged with the second variant of resisting arrest, his conviction might have been affirmed under *Rainey*, based on the number of officers involved in making the arrest and the effort that they had to expend in order to detain him.[39]  And, in any event, the

---

[36]    *Id.* at 32-33.

[37]    *See* Crosby's Reply Br. at 9-10.

[38]    Commonwealth's Br. at 15-17.

[39]    *See id.* at 20-21.  In *Eberhardt*, police officers found the appellant hiding under a bed when they were attempting to arrest him in his home.  In an effort to evade, the appellant "scuffle[d]" with officers throughout the house, overturning furniture in the process, before he fled through a third story window.  *Eberhardt*, 450 A.2d at 652.

Commonwealth argues, subsequent Superior Court case law indicates that *Rainey* has been abandoned.[40] More recent cases, the Commonwealth claims, hold that "the defendant's refusal to acquiesce to an attempt to arrest him, coupled with a necessary physical exertion on the part of the officer(s) to secure the defendant's person, has been deemed to be sufficient to satisfy this provision of the statute."[41]

Under this reading, the Commonwealth maintains, there was sufficient evidence of resisting arrest in this case. The Commonwealth rejects Crosby's argument that the use of the taser did not amount to substantial force. By that time, Officer Greco had already tackled Crosby—a use of substantial force that was necessitated by Crosby's conduct.[42]

Finally, the Commonwealth emphasizes, the focus of the statute is not upon the officer's conduct, but rather upon the defendant's resistance. What's more, the statute proscribes conduct that either "justifies" or "requires" substantial force; meaning that the actual force used is not dispositive. The statute criminalizes conduct that would have justified or required the use of substantial force, whether or not the officer actually did so. As such, a defendant should not be permitted to "[avoid] prosecution for resisting arrest simply because the officer chose to use less force than he otherwise could have."[43] With respect to the taser, the Commonwealth takes the position that Officer Greco exercised restraint, such that he would have been justified in actually tasing Crosby as opposed to

---

[40] *See id.* at 21-26 (discussing *Miller*, *Clark*, *Thompson*, and *McDonald*).

[41] *Id.* at 26.

[42] *See id.* at 27-28.

[43] *Id.* at 31.

administering a dry stun. Officer Greco's decision to use less force, the Commonwealth argues, does not relieve Crosby of culpability under the statute.[44]

### III.      Analysis

The question presented calls for our interpretation of the resisting arrest provision of the Crimes Code. Statutory interpretation is a question of law, as to which our standard of review is *de novo* and our scope of review plenary.[45] In deciding matters of statutory interpretation, we apply the guidelines set forth in the Statutory Construction Act,[46] which provides that the object of statutory interpretation is "to ascertain and effectuate the intention of the General Assembly."[47] Generally, the plain language of the statute "provides the best indication of legislative intent."[48] Where a word or phrase is defined by a statute, the definition supplied by the legislature controls.[49] Otherwise, words are to be understood according to their "common and approved usage."[50]

Official comments by the committee that drafted the statute may be taken into consideration when construing the language of the statue, so long as the comment was available prior to the statute's consideration by the General Assembly.[51] To the extent

---

[44]      *Id.* at 30-31.

[45]      *Commonwealth v. Myers*, 164 A.3d 1162, 1169 (Pa. 2017).

[46]      1 Pa.C.S. §§ 1501-1991; *see id.* § 1901.

[47]      1 Pa.C.S. § 1921.

[48]      *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016).

[49]      *See* 1 Pa.C.S. § 1903 ("[T]echnical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.").

[50]      *Id.*

[51]      1 Pa.C.S. § 1939; *see French*, 611 A.2d at 178 n.8.

that the comment conflicts with the text of the statute, however, the text of the statute controls.[52]

Crosby's challenge revolves around the meaning of the phrase "substantial force." As mentioned, Section 5104 states that a person commits the offense of resisting arrest when he or she "employs means justifying or requiring substantial force to overcome the resistance."[53]  The conduct on the part of the defendant that the provision criminalizes is the "means" that the defendant employs in attempting to prevent police officers from making an arrest.  The statute treats "substantial force" on the part of police officers as a mirror, and as a benchmark, for assessing the means used by the defendant.

The Superior Court's case law interpreting this offense is in apparent disarray: whether an appellant may prevail on the theory that his or her conduct amounted merely to a "minor scuffle" depends upon which line of caselaw that court chooses to foreground. What's more, it is incongruous that evidence of "passive resistance" will support a conviction for resisting arrest so long as it meets the statutory standard, while a "minor scuffle" will not suffice, despite meeting that standard.  To clarify this muddle, we take this opportunity to explain that the offense is best understood as follows.

The "substantial force" variety of resisting arrest consists of three distinct elements. A person commits the offense when:  (1) the defendant acts with the intent to prevent a lawful arrest; (2) using means requiring or justifying a use of force by police; and (3) the force required or justified is substantial.  Crosby does not contend that he lacked the requisite intent to prevent a lawful arrest, or that the force used by police was not justified or required.  The focus of our analysis, then, is upon whether the force that was used by police (which Crosby does not contend was beyond the force required or justified in order

---

[52]     1 Pa.C.S. § 1939.

[53]     18 Pa.C.S. § 5104.

to secure his arrest) was "substantial." Two potential uses of force are in play here, which uses may—as a reflection of the defendant's own conduct—satisfy the standard for "substantial force": Officer Greco's tackle of Crosby, and Officer Greco's use of his taser to perform the dry stun. As the tackle, standing alone, established substantial force, we need not explore the effect of the dry stun.

As both parties acknowledge, the phrase "substantial force" is left undefined by Section 5104, and by the Crimes Code in general. The phrase, then, must be read according to its common and approved usage. No one argues that this phrase is ambiguous. A brief review of a handful of dictionary definitions comports with what we find to be the common understanding of the phrase within this context. Merriam-Webster defines "substantial" as, *inter alia*, "not imaginary or illusory"; "considerable in quantity;" "significantly great."[54] Black's Law Dictionary defines "substantial," most pertinently, as "considerable in extent, amount, or value."[55] Merriam-Webster defines "force" as "strength or energy exerted or brought to bear"; the "cause of motion or change"; and "active power."[56] Black's defines "force" as "strength or energy exerted; the cause of motion or change; [especially], physical power used in pulling, pushing, pressing, attracting, or repelling."[57]

Taking these usages together, "substantial force" refers to the application of a considerable—not insubstantial—amount of physical power. The circumstances of an arrest are so varied that the question of whether the force used by police was substantial

---

[54] *Substantial*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/substantial (last visited Dec. 12, 2024).

[55] *Substantial*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[56] *Force*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/force (last visited Dec. 12, 2024).

[57] *Force*, BLACK'S LAW DICTIONARY (12th ed. 2024).

will necessarily entail a fact-specific inquiry. The effort that is required in order to overpower a person who is physically resisting officers' attempts to restrain him or her will depend upon the physical size and abilities of the officer, those of the arrestee, the circumstances of the physical environment in which the arrest is taking place, and any other contextual factors. To that end, an act that constitutes substantial force under one set of circumstances, involving one particular defendant, sometimes might not amount to substantial force under another set of circumstances involving a different defendant. Any attempt by this Court to classify *ex ante* the kinds of force that generally might be required to overcome a hypothetical defendant's resistance would be futile. The task of distinguishing whether a police tactic amounts to substantial force under a case's circumstances is best entrusted to trial courts and juries, which, as factfinders, are uniquely positioned to make such contextualized factual determinations. For today, it suffices to say that, under these circumstances—in which Crosby, an adult male, one of whose hands was in handcuffs, struggled against Officer Greco and refused to surrender his free hand—tackling the actor to the ground amounted to substantial force.

Crosby does not argue that the amount of force used by Officer Greco exceeded the amount of force that was "justified" or "required" by Crosby's conduct.[58] The inclusion of this language in the statute compels the conclusion that the amount of force actually used does not dictate whether an individual has committed the offense. Rather, the focal point is the amount of force necessitated by the defendant's resistance, regardless of whether that is greater or less than the amount of force actually used by the arresting officer. A defendant's conviction does not depend upon the actual response of the police;

---

[58] In a different vein, Crosby argues that the amount of force that in his estimation would have amounted to substantial force—properly tasing Crosby—would have been beyond the amount required or justified. *See* Crosby's Reply Br. at 9-10. Because the tackle itself rose to the level of substantial force, we need not address whether other kinds of substantial force would have been required or justified by Crosby's conduct.

it turns instead upon what response would have been required or justified by the defendant's own actions. A defendant whose conduct does not necessitate substantial force should not be convicted of the offense solely because officers responded with excessive force. Nor should a defendant whose conduct certainly would have invited the use of substantial force escape conviction merely because police opted to exercise restraint. The inquiry engendered by this prong of Section 5104—whether certain police conduct would have been "required or justified"—is likewise highly fact-specific. No two arrests are the same. Nor is there one "correct" way for police officers to respond in any given circumstance. In attempting to resolve the question of what use of force would have been required or justified, the factfinder should contemplate the range of responses that a reasonable officer might deploy in response to the defendant's conduct, under all of the facts and circumstances surrounding the attempted arrest.

We reject Crosby's argument that his encounter with Officer Greco was merely a "minor scuffle," and that such interactions escape the reach of the statute pursuant to the Joint State Government Commission comment. True it is that we may consider official comments to statutes in our interpretative efforts so long as those comments were available at the time that the General Assembly considered the statute. But when a comment is at odds with the text of the statute, the statutory language prevails. The text of the statute makes no distinction between major and minor "scuffles" with police, nor does it condone certain forms of resistance. The lodestar, for purposes of the second variant of the offense, is whether the means of resistance used by the defendant justified or required the use of substantial force by the arresting officer. The comment sets a threshold for resistance that differs from the threshold contained with the text of the statute. We must give primacy to the language of the statute, rather than to the comment. For the same reasons, we hold that *Rainey* is inconsistent with the plain language of

Section 5104. The *Rainey* court erred in embracing the "minor scuffle" as the standard for conduct that falls short of criminally resisting arrest. Our courts must instead focus on the inquiry that the statute's language supplies.[59]

## IV.      Conclusion

Under the facts and circumstances of this case, the Superior Court did not err in concluding that sufficient evidence supported Crosby's conviction for resisting arrest. The judgment of the Superior Court, upholding Crosby's judgment of sentence and remanding to correct the sentencing order, is affirmed.

Chief Justice Todd and Justices Donohue, Dougherty, Mundy, Brobson and McCaffery join the opinion.

---

[59]      Though not directly at issue in this case, the same is true where a defendant is said to have engaged in "passive resistance" in violation of the statute. *See, e.g.*, *Thompson*, 922 A.2d at 928. In such instances, courts must likewise focus on the standard set by the statute—whether the defendant's conduct required or justified the use of substantial force by police officers.